## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| **LAURA M. LAUGHLIN,** ) | |
| **1110 3rd Avenue,** ) | |
| **Seattle, Washington 98101,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. _____** |
| ) | |
| **ERIC H. HOLDER, JR. (FBI),** ) | |
| **950 Pennsylvania Avenue, N.W.,** ) | |
| **Washington, D.C. 20530,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

-------------------------------------------------

## COMPLAINT

### Preliminary Statement

1.      Plaintiff Laura M. Laughlin, the Special Agent-in-Charge ("SAC") of the Seattle

Division of the Federal Bureau of Investigation ("FBI"), files this action against Defendant Eric

H. Holder, Jr., in his capacity as Attorney General, seeking redress for gender discrimination and

retaliation under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title

VII") and age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621

*et seq*.

2.      The FBI has repeatedly denied Plaintiff promotions for which she was qualified.

Instead, the FBI has promoted less-qualified, less-experienced male employees to those

positions.  The FBI has also retaliated against Plaintiff in violation of Title VII for previous

complaints of gender discrimination and for protesting the FBI's discriminatory treatment of one

of her subordinates.

3.      Since 2004, the FBI has also denied Plaintiff bonuses to which she was entitled,

based on her gender and in retaliation for her complaints of discrimination.

4.      Only 13 of the 65 current SACs are women.

5.      SACs typically serve in their position for only one or two years before they are promoted.

6.      Plaintiff has served as SAC of the Seattle Division since March 1, 2005 and has not received a promotion.

7.      On information and belief, only one other SAC has served as an SAC for longer than Plaintiff, and that SAC has not applied for promotions.

8.      On information and belief, over 25 individuals began serving as SACs after Plaintiff began serving as SAC of the Seattle Division on March 1, 2005, and have since received promotions to other positions.

## Jurisdiction and Venue

9.      This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

10.     Venue is proper in this jurisdiction under 28 U.S.C. § 1391(e).

## Parties

11.     Plaintiff Laura M. Laughlin is a citizen of the State of Washington who is domiciled in Seattle, Washington, and works at 1110 3rd Avenue, Seattle, Washington 98101. She was born in 1957 and has been employed by the FBI for approximately 26 years.

12.     Defendant Eric H. Holder, Jr. is the Attorney General and, as such, has legal authority over the FBI.

## Factual Allegations

### Plaintiff Engaged in Protected Activity by
### Filing a Charge of Gender Discrimination with the FBI.

13.     In 1997, William Esposito, Assistant Director of the FBI, selected Plaintiff to

serve as Operations Manager of the FBI's Campaign Financing Task Force, over the objection of Inspector-in-Charge Jeffrey Lampinski.

14.     When Plaintiff began as Operations Manager, Mr. Lampinski discriminated against her on the basis of gender by assigning her trivial administrative duties even though her position description indicated that she was to be given investigative responsibilities.

15.     In 1997, Plaintiff filed an internal administrative equal employment opportunity ("EEO") complaint against Mr. Lampinski pursuant to Title VII and 29 C.F.R. § 1614.  EEO complaints of federal employees are protected by the Privacy Act, and access to them is limited to those with a need to know.

16.     While Plaintiff's EEO complaint was pending, the FBI appointed Mr. Lampinski to serve as Plaintiff's SAC in the Philadelphia Division.

17.     While Plaintiff's EEO complaint was pending, T.J. Harrington, Assistant Special Agent-in-Charge of the Philadelphia Division, who had no reason to know of the EEO complaint, learned of the complaint and sought information about it in or around the beginning of 2002.

18.     On information and belief, both Deputy Director John S. Pistole and Director Robert S. Mueller, III, also learned of Plaintiff's complaint while the complaint was pending.

19.     On December 8, 2003, Plaintiff resolved her dispute with the FBI concerning Mr. Lampinski's conduct.

**Plaintiff Also Engaged in Protected Activity by Opposing What She Reasonably Believed to be the FBI's Unlawful Discrimination Against Her Subordinate.**

20.     In 2005, after she was appointed SAC of the Seattle Division, Plaintiff initiated a review of the Seattle Division's handling of a major murder investigation, designated as Major Case 186.

21.     This investigation had previously been led by a Supervisory Special Agent in the Seattle Division ("the SSA") before it was taken over by the Assistant Special Agent-in-Charge of the Seattle Division, in violation of FBI protocol, due to the fact that two white, male Special Agents assigned to the case "did not get along" with the SSA.

22.     During a review of the investigation when she became SAC of the Seattle Division, Plaintiff observed the two Special Agents engaging in a pattern of what she reasonably believed to be unlawful race- and sex-based discrimination against the SSA.

23.     During her review of the investigation, Plaintiff discovered multiple instances of insubordination directed at the SSA by the two Special Agents.

24.     After the two Special Agents refused to cease their insubordination, Plaintiff removed them from the investigation and reassigned them to other duties.

25.     A Special Assistant United States Attorney who was, on information and belief, a supporter of the two Special Agents and a close associate of Director Mueller and high-level Department of Justice officials, strongly opposed the reassignment.

26.     Between April 3, 2006, and April 14, 2006, an FBI Inspector-in-Charge inspected the Seattle Division.  The Inspector-in-Charge inaccurately faulted the SSA for management deficiencies.

27.     Plaintiff refused to sign the inspection documents alleging these deficiencies, as she believed they were inaccurate and based on unlawful discrimination against the SSA.

28.     Plaintiff complained about the unlawful discrimination during meetings with Deputy Director Pistole, Assistant Director James Burris of the Criminal Investigative Division, Executive Assistant Director Michael Mason of the Criminal Investigative Division, and

Assistant Director Kenneth Kaiser of the Inspection Division.  FBI headquarters told Plaintiff it would follow up on her complaints, but it never did so.

29.     During a June 5, 2006, teleconference with Director Mueller, Plaintiff objected to the treatment of the SSA and requested an opportunity to discuss the situation with Director Mueller.  Director Mueller immediately stated that the FBI would re-inspect the Seattle Division six months after the first inspection.

30.     Normally, the FBI does not reinvestigate a division only six months after a prior investigation.

### Plaintiff Engaged in Protected Activity by Opposing the FBI's Discriminatory Treatment of its Female Senior Executives.

31.     In 2009, a group of female SACs joined together to address discrimination they had experienced in the FBI's Senior Executive Service ("SES").

32.     Plaintiff was a vocal participant in the group.  On information and belief, she was also the only member of the group who had previously brought an EEO complaint and followed through a lengthy EEO process.

33.     In January 2009, Plaintiff and other female SACs reported to Director Mueller that systematic gender-based inequities persisted within the ranks of the FBI's SES.  The group made its reports through the FBI's EEO Administrator and the FBI's Ombudsperson.

34.     Plaintiff and other female SACs recommended that the FBI establish a working group to eliminate the gender disparities within the SES.

35.     On January 19, 2009, Plaintiff and other female SACs conducted a video conference with Director Mueller regarding gender-based inequities within the SES.

36.     On May 18, 2009, Plaintiff and other female SACs met with Director Mueller and Associate Deputy Director Timothy Murphy.

37.     At the May 2009 meeting, Plaintiff and the other female SACs in attendance stated that the FBI had discriminated against them because of their sex in pay and compensation; the method of promotion within the SES; and the climate survey and inspections.

38.     In October 2009, Plaintiff and other female SACs again met with Director Mueller to discuss the gender-based inequities within the SES.

39.     During the October 2009 meeting, Director Mueller directed Plaintiff and the other female SACs in attendance to document their concerns and provide a summary to Associate Deputy Director Murphy.

40.     After the October 2009 meeting, the FBI's EEO Administrator stated that the Director would no longer entertain the group's concerns.

41.     The FBI did not resolve the gender-based disparities identified by Plaintiff and the other female SACs.

**The FBI Discriminated and Retaliated Against Plaintiff by
Repeatedly Failing to Promote Her to Positions for Which She Was Qualified.**

42.     The FBI repeatedly discriminated against Plaintiff based on her gender and retaliated against her for engaging in the aforementioned protected activities.  While several of these non-promotions occurred outside the limitations period, all show a pattern of retaliation and discrimination.

43.     On June 18, 2004, approximately six months after settling her 1997 EEO claim, Plaintiff applied for the position of SAC of the Philadelphia Division.

44.     The FBI selected a male to fill the position.

45.     On information and belief, prior to the time of the selection, the selectee had never filed a charge of discrimination with the FBI.

46.     During the summer of 2004, approximately six months after resolving her 1997

EEO claim, Plaintiff applied for the position of SAC of the Los Angeles Division.

47.     The FBI denied Plaintiff this promotion.

48.     On information and belief, the selectee for this position was a male with inferior qualifications and less experience than Plaintiff.

49.     On information and belief, prior to the time of the selection, the selectee had never filed a charge of discrimination with the FBI.

50.     On February 11, 2007, Plaintiff applied for the position of SAC of the Newark Division.

51.     A male who, on information and belief, had inferior qualifications and less experience than Plaintiff was selected for this position.

52.     On information and belief, prior to the time of the selection, the selectee had never filed a charge of discrimination with the FBI.

53.     On April 28, 2007, Plaintiff applied for the position of Assistant Director of the Security Division of FBI Headquarters.

54.     A male who, on information and belief, had inferior qualifications and less experience than Plaintiff was selected for this position.

55.     On information and belief, prior to the time of the selection, the selectee had never filed a charge of discrimination with the FBI.

56.     On May 20, 2007, Plaintiff applied for the position of Assistant Director of the Training Division at Quantico, Virginia.

57.     On information and belief, a male with inferior qualifications and less experience than Plaintiff was selected for this position.

58.     On information and belief, prior to the time of the selection, the selectee had

never filed a charge of discrimination with the FBI.

59.     On October 23, 2007, Plaintiff applied for the position of Deputy Assistant Director of the Criminal Investigative Division at FBI Headquarters.

60.     On information and belief, a male with inferior qualifications and less experience than Plaintiff was selected for this position.

61.     On information and belief, prior to the time of the selection, the selectee had never filed a charge of discrimination with the FBI.

62.     On December 31, 2007, Plaintiff applied for the position of SAC of the Philadelphia Division.

63.     On information and belief, a female with inferior qualifications and who had served as a SAC for less than one year was selected for this position.

64.     Prior to her promotion, the selectee had never managed her own field office.

65.     On information and belief, prior to the time of the selection, the selectee had never filed a charge of discrimination with the FBI.

66.     On February 14, 2008, Plaintiff applied for the position of SAC of the Baltimore Division.

67.     On information and belief, a female with inferior qualifications who had never served as an SAC was selected for this position.

68.     On information and belief, prior to the time of the selection, the selectee had never filed a charge of discrimination with the FBI.

69.     In August 2008, Plaintiff applied for the position of SAC of the Office of International Operations.

70.     In July 2009, Plaintiff learned that Sean Joyce had been directly placed into the

position of Deputy Assistant Director of the Office of International Operations in February 2009.

71.     The Office of International Operations was subsequently re-named the
International Operations Division, to be headed by an Assistant Director rather than an SAC.

72.     On October 2, 2009, the FBI announced that Mr. Joyce had been named Assistant
Director of the newly designated International Operations Division.

73.     Although the Office of International Operations was upgraded and renamed the
International Operations Division, and the SAC position was upgraded and renamed an Assistant
Director position, the duties of the Assistant Director of the International Operations Division
(the position filled by Mr. Joyce) were identical to the duties of the SAC of the Office of
International Operations (the position for which Plaintiff applied).

74.     On information and belief, Mr. Joyce was less qualified and had less experience
than Plaintiff.

75.     On information and belief, prior to the time of the selection, Mr. Joyce had never
filed a charge of discrimination with the FBI.

76.     In August 2009, Plaintiff applied for the position of Assistant Director of the Los
Angeles Division.

77.     On August 31, 2009, Deputy Director Pistole told Plaintiff that she was the only
woman to have applied for the Assistant Director position.

78.     On September 29, 2009, the FBI selected a male for the Assistant Director
position.

79.     On information and belief, prior to the time of the selection, the selectee had
never filed a charge of discrimination with the FBI.

80.     On May 26, 2010, Plaintiff applied for the position of Assistant Director-in-

Charge of the New York Division.

81.     The FBI selected a woman for this position.

82.     On information and belief, prior to the time of the selection, the selectee had never filed a charge of discrimination with the FBI.

83.     On July 8, 2010, Plaintiff applied for the position of SAC of the Philadelphia Division.

84.     Even though the Assistant Director of the Criminal Investigative Division had told Plaintiff that she would never be selected as SAC of the Philadelphia Division because she had previously served in that division, the FBI selected a male who had previously served in the Philadelphia Division for this position.

85.     On information and belief, the selectee had inferior qualifications and less experience than Plaintiff.

86.     On information and belief, the selectee had never managed his own field office in a permanent capacity at the time of his promotion.

87.     On information and belief, prior to the time of the selection, the selectee had never filed a complaint of discrimination with the FBI.

### The FBI Discriminated and Retaliated Against Plaintiff by Interfering with Her Efforts to Hire a Border Liaison Officer.

88.     Plaintiff first requested a Border Liaison Officer (BLO) for the Seattle Division on June 20, 2005.

89.     A BLO was critical for the mission of the Seattle Division because of its proximity to the border and the upcoming Olympics in Vancouver, British Columbia, Canada.

90.     The FBI's Counterterrorism Division responded to Plaintiff's request on July 26, 2005.  Plaintiff was told that her request would be approved, but it was not.

91.     On September 22, 2005, Director Mueller's Resource Planning Office halted the progress of Plaintiff's request by holding the request in abeyance with no justification and contrary to standard practice.

92.     Plaintiff did not receive approval for a BLO until July 24, 2009, more than four years after she made the initial request.

93.     The delay in obtaining approval for a BLO impeded Plaintiff's ability to properly manage the Seattle Division.

94.     On information and belief, other SACs' requests for a BLO have been routinely granted within less than a year.

95.     On information and belief, no other SAC has ever had to wait over four years to obtain approval to post for a BLO.

### The FBI Discriminated and Retaliated Against Plaintiff by Removing Major Case 186 from Her Supervision.

96.     On June 12, 2006, the FBI took the unprecedented step of reassigning the management of Major Case 186 from Plaintiff, in her capacity as SAC of the Seattle Division, where the events giving rise to the investigation had occurred, to the SAC of the Portland Division.

97.     On information and belief, the FBI had never reassigned the management of a case from one division to another, and has never done so since.

98.     The reassigned investigation was led by a male who, on information and belief, had never complained of discrimination.

99.     The two Special Agents whom Plaintiff had removed from Major Case 186 were reassigned to the investigation.

100.    The FBI damaged Plaintiff's reputation within the agency and in the City of

Seattle by taking the unprecedented step of reassigning the management of Major Case 186 to the SAC of the Portland Division.  Reappointing the Special Agents compounded the harm to her reputation and undermined Plaintiff as SAC for the Seattle Division.

### The FBI Discriminated and Retaliated Against Plaintiff by Manipulating Her Performance Evaluations and Denying Her Bonuses.

101.    An FBI inspection team re-inspected the Seattle Division between December 4, 2006 and December 15, 2006, following Plaintiff's complaint that her subordinate had been discriminated against.

102.    The December 2006 investigators targeted Plaintiff by emphasizing questions that would raise asserted deficiencies in her performance and gathering statements asserting that Plaintiff performed poorly, but taking no notes when interviewees made statements praising her performance.

103.    The investigators interviewed Assistant Special Agent-in-Charge Steven Dean, who praised Plaintiff's job performance.  The investigators took no notes during this interview.

104.    Mr. Dean informed Plaintiff that he thought the inspection team was alleging deficiencies in Plaintiff's performance because of her gender.

105.    Inspector-in-Charge Arthur Balizan praised Plaintiff's job performance in general, but asserted two management deficiencies in her performance: first, that Plaintiff had failed to consult with the Special Assistant United States Attorney before reassigning personnel previously assigned to the investigation of Major Case 186, and second, that the Seattle Division "lack[ed] . . . a strong and effective executive level media program."

106.    During a meeting held after Mr. Balizan's report, Deputy Director Pistole highlighted these two deficiencies but made no mention of the praise in the report.

107.    On information and belief, Plaintiff was singled out for not consulting with the

Special Assistant United States Attorney before reassigning personnel, but male members of the Seattle management team did not receive negative treatment for their involvement in the reassignment.  A male Assistant Special Agent-in-Charge, who was program manager for Major Case 186 received a positive inspection rating and a promotion after he recommended the reassignment.

108.    Plaintiff was singled out for failing to facilitate a media program despite the fact that the FBI provided SACs with no training in handling the media, and despite the fact that the only response Plaintiff had received when she asked for guidance on the issue was, "You can talk to the media – just don't say the wrong thing."

109.    Plaintiff received no bonus in 2006, 2007, or 2008, despite the fact that her performance was equal or superior to the performance of SACs who received bonuses and that under her leadership, the Seattle Division has been recognized with two Director's Awards and two awards from the Attorney General for excellence in investigations and intelligence protocols which have been implemented Bureau-wide.

### The FBI Discriminated and Retaliated Against Plaintiff by Repeatedly Pressuring Her to Retire.

110.    Beginning in January 2007, the year Plaintiff turned 50, the FBI began pressuring Plaintiff to retire.

111.    On September 14, 2007, Deputy Director Pistole, the second-in-command to Director Mueller, asked Plaintiff if she would be retiring soon.

112.    In January 2008, the Executive Development and Selection Program Administrator informed Plaintiff that the Inspection Division's findings of managerial deficiencies in Plaintiff's job performance would follow her for the rest of her career.  On information and belief, findings of managerial deficiencies do not typically prevent personnel

from being promoted.

113.    On May 5, 2008, Deputy Director Pistole told Plaintiff that she would never be promoted within the FBI.

114.    On August 11, 2008, Deputy Director Pistole again asked Plaintiff when she would retire, and suggested that she find a job in the private sector.

115.    This pressure undermined Plaintiff's confidence and interfered with her job performance.

### The FBI Discriminated and Retaliated Against Plaintiff by Interfering With Her Ability to Fill a Supervisory Position Related to the Investigation of Major Case 186.

116.    The supervisor for the investigation of Major Case 186, a Portland Supervisory Special Agent who had been formally reassigned to the Seattle Division, left the position due to another assignment, and therefore the position was vacant and needed to be filled.

117.    Plaintiff initiated a posting to fill the position, as she was responsible for handling all administrative aspects of Major Case 186.

118.    David Miller, SAC of the Portland Division, retired effective July 1, 2009.  The Director selected Arthur Balizan, the Inspector-in-Charge of the Seattle Division's reinspection and the author of the 2006 Managerial Deficiencies report, to replace him.

119.    On July 29, 2009, Mr. Balizan refused to approve Plaintiff's posting to replace the supervisor of the investigation of Major Case 186.

120.    In or about the fall of 2009, Mr. Balizan contacted Criminal Investigative Division Assistant Director Kevin Perkins to complain about the job posting.

121.    On September 9, 2009, the FBI held a meeting of the Special Agent Mid-Level Management Selections Board ("SAMMS").  The SAMMS Board had the power to recommend

selection of a new supervisor for Major Case 186.

122.   At this meeting, at the request of Assistant Director Perkins, the SAMMS Board tabled without consideration the position vacancy.  Assistant Director Perkins made that request at the behest of Mr. Balizan.

123.   The tabling of the posting for the supervisory position had a detrimental effect on the investigation of the case and prevented Plaintiff from performing her job responsibilities to the best of her ability.

124.   On information and belief, the FBI had never allowed an SAC to have input or authority regarding a posting in another division.

### The FBI Discriminated and Retaliated Against Plaintiff by Interfering with Her Efforts to Hire a Media Representative.

125.   On December 31, 2009, the Seattle Division Media Representative retired. Plaintiff had begun working with the outgoing Media Representative and FBI Headquarters' Press Office during the summer of 2009 to identify a Special Agent to fill the position.

126.   The 2006 Inspection Report asserted that Plaintiff had  a "managerial deficiency" of "lack[ing] . . . a strong and effective executive level media program" in the Seattle Division.

127.   On information and belief, no other SACs were written up for a management deficiency in handling the media, an area in which the FBI provided no training.

128.   Plaintiff's professional success depended, in part, on her office's management of the media, a task to be performed primarily by the Media Representative.

129.   Plaintiff requested a Specialty Transfer for the Media Representative position in preparation for the 2010 Olympics, but was advised that the FBI had denied her request.

130.   Between August 2009 and January 2011, Plaintiff engaged in an intensive effort to obtain a replacement for the Seattle Division's Media Representative.

131.    On October 27, 2009, Plaintiff requested that the Transfer Unit of the FBI post a Specialty Transfer to fill the vacant Media Representative position in the Seattle Division.

132.    Immediately before the position was to be posted, the Administrative ASAC for the Seattle Division informed Plaintiff that the approval to post the position had been revoked. The FBI provided no reason for the revocation.

133.    On information and belief, the FBI frustrated Plaintiff's repeated attempts to fill the Seattle Division's Media Representative position, based on her gender and in retaliation for her complaints of discrimination.

134.    Because Plaintiff had previously been accused of "lack[ing] . . . a strong and effective executive level media program," the FBI set Plaintiff up for further negative reviews by impeding her ability to fill the Media Representative position.

135.    The absence of a Media Representative in the Seattle Division impeded Plaintiff's ability to maintain a strong and effective media program as the 2010 Winter Olympics approached.  Plaintiff would have needed to communicate with the media quickly and effectively in the event that a United States or international law enforcement matter arose at the nearby Olympics.

136.    On information and belief, every field office has a Media Representative position.

137.    On information and belief, male SES officials and SES officials who had not previously filed complaints of discrimination were routinely granted requests to fill Media Representative positions in their respective field offices.

### Plaintiff Has Exhausted Her Administrative Remedies.

138.    Plaintiff initiated the EEO informal complaint process on September 25, 2008, participated in Alternative Dispute Resolution, and filed a formal complaint of discrimination,

Complaint No. 560-2010-00044x, with the FBI's EEO Office on December 16, 2008.

139.    Between March 9, 2009 and July 6, 2009, the EEO Office of the Drug

Enforcement Agency investigated Plaintiff's administrative complaint.[1]

140.    In July 2009, Plaintiff submitted a request for a hearing before an Administrative

Judge ("AJ") of the Equal Employment Opportunity Commission ("EEOC").

141.    Between July 2009 and December 18, 2009, Plaintiff received no communications

at all from the EEOC.

142.    On information and belief, the EEOC did not assign an AJ to preside over her

administrative complaint until December 2009.

143.    On December 18, 2009, Plaintiff received an Acknowledgement and Order from

the AJ assigned to her administrative complaint.

144.    The Acknowledgement and Order imposed a precise deadline for the initiation of

discovery, but imposed no such deadline for amendments to Plaintiff's complaint.

145.    On January 6, 2010, eight business days after Plaintiff's receipt of the

Acknowledgement and Order, Plaintiff filed a motion to postpone the initiation of discovery,

stating that she was preparing to file a motion to amend her administrative complaint.  Plaintiff

had submitted her motion to amend to the FBI's Civil Discovery Review Unit for approval, as is

required before dissemination for security purposes, but as of January 6, 2010, she had not yet

received approval.

146.    On February 1, 2010, thirty-nine days after Plaintiff received the

Acknowledgement and Order, she filed her first motion to amend her administrative complaint to

add five additional claims: (1) that the FBI discriminated against Plaintiff on the basis of sex, and

retaliated against her in response to her complaint, when it selected  a less-qualified applicant for

---

[1]        The investigation was outsourced to the Drug Enforcement Agency to avoid a conflict of interest.

the position of Assistant Director of the Los Angeles Division in September, 2009; (2) that the

FBI discriminated against Plaintiff on the basis of sex, and retaliated against her in response to

her previous complaints of discrimination, when it denied her a promotion to the position of SAC

for the Office of International Operations, for which she applied in August 2008; (3) that the FBI

discriminated against Plaintiff on the basis of sex, and retaliated against her in response to her

complaint, by not allowing her to fill a management position in her office; (4) that the FBI

discriminated against Plaintiff on the basis of sex, and retaliated against her in response to her

complaint, by delaying approval to post for a Border Liaison Officer for the Seattle Division for

four years; and (5) that the FBI discriminated against Plaintiff on the basis of sex, and retaliated

against her in response to her complaint, when it impeded Plaintiff's replacement of the Seattle

Division Media Representative.

147.    The FBI did not respond to Plaintiff's administrative complaint until after the

Administrative Judge reissued the Acknowledgement and Order on September 22, 2010, stating

that the first Acknowledgement and Order had been sent to the wrong FBI address.

148.    On November 3, 2010, while her first motion to amend her administrative

complaint was still pending, Plaintiff filed a second motion to amend her administrative

complaint to add two additional claims: (1) that the FBI retaliated against Plaintiff in response to

her complaint, when it selected an applicant who had engaged in no prior protected activity for

the position of Assistant Director-in-Charge of the New York Office in August 2010, despite the

fact that the selectee's qualifications were lesser than or equal to Plaintiff's; and (2) that the FBI

discriminated against Plaintiff on the basis of sex, and retaliated against her in response to her

complaint, when it selected a less-qualified applicant for the position of SAC of the Philadelphia

Division in September, 2010.

149.    On April 25, 2011, the AJ ruled that Plaintiff was required to have moved to amend within 45 days of each of the adverse actions addressed in the amendments.  The 45-day rule, however, applies to new complaints, not to amendments.

150.    On June 27, 2011, Plaintiff filed a consent motion with the AJ withdrawing her administrative complaint to file the instant action in federal court.

151.    The AJ issued an Order of Dismissal of Hearing on June 28, 2011, and the Department of Justice dismissed Plaintiff's administrative complaint on July 25, 2011.

## COUNT I

### Gender Discrimination in Violation of Title VII

152.    The foregoing paragraphs are incorporated by reference as if fully set out herein.

153.    The FBI consistently refused to promote Plaintiff because of her gender in violation of Title VII of the Civil Rights Act of 1964, 29 U.S.C. § 2000e *et seq.*

154.    Between 2007 and 2010, Plaintiff applied for ten promotions within the FBI.

155.    Seven of these ten promotions were awarded to male employees with inferior qualifications and less experience than Plaintiff.

156.    The FBI denied Plaintiff promotions because of her gender by awarding promotions to male candidates who have less experience and inferior qualifications than Plaintiff.

157.    Despite Plaintiff receiving performance evaluations that justified substantial bonuses, the FBI refused to award Plaintiff a bonus in 2008.

158.    On information and belief, the FBI awarded bonuses to male employees whose performance was equal or inferior to Plaintiff's.

159.    In 2006, the FBI conducted two separate investigations of the Seattle Division,

which Plaintiff led.

160.    In 2006, the FBI reassigned management of Major Case 186 from the SAC of the Seattle Division to the SAC of the Portland Division, where the investigation has since then been directed by a succession of male SACs.

161.    On information and belief, on no other occasion has the FBI removed the responsibility of managing an investigation from the SAC in the division in which the events underlying the investigation occurred and assigned the investigation to an SAC in a different division.

## COUNT II

## Retaliation in Violation of Title VII

162.    The foregoing paragraphs are incorporated by reference as if fully set out herein.

163.    From 1997 to 2003, Plaintiff engaged in protected activity by filing a charge of gender discrimination with the FBI's EEO office and pursuing an administrative complaint to resolution.

164.    In 2005 and 2006, Plaintiff engaged in protected activity by protesting the FBI's discriminatory treatment of the SSA.

165.    In 2009, Plaintiff engaged in protected activity as an active member of the group of female FBI executives who met with Director Mueller concerning systematic gender-based inequities within the ranks of the FBI's Senior Executive Service ("SES").

166.    The FBI took a series of adverse actions against Plaintiff in retaliation for her legally-protected activity.

167.    Between 2007 and 2010, Plaintiff applied for ten promotions within the FBI.

168.    The FBI did not select Plaintiff for any of the ten positions, despite the fact that

she was qualified for each of them.

169.    On information and belief, none of the selectees for the ten promotions had previously brought an EEO complaint and followed through a lengthy EEO process.

170.    Despite Plaintiff exhibiting performance that justified substantial bonuses, the FBI failed to award Plaintiff a bonus in 2008.

171.    On information and belief, the FBI awarded bonuses to employees whose performance was similar or inferior to Plaintiff's and who had not complained of discrimination.

172.    In 2006, the FBI conducted two separate investigations of the Seattle Division that Plaintiff led.

173.    In 2006, the FBI reassigned the management of Major Case 186 from the SAC of the Seattle Division to the SAC of the Portland Division, a male who, on information and belief, had never complained of discrimination.

174.    On information and belief, the FBI had never before removed the management of an investigation of a crime from the division in which the crime occurred and assigned the management of the investigation to an SAC in a different division.

175.    The FBI took the aforementioned adverse employment actions to retaliate against Plaintiff for filing a complaint of gender discrimination, opposing harassment of one of her subordinates, and actively joining with other female SACs who met with Director Mueller concerning systematic gender discrimination within the SES ranks, in violation of the Title VII of the Civil Rights Act of 1964, 29 U.S.C. § 2000e *et seq*.

## COUNT III

## Hostile Work Environment in Violation of Title VII

176.    The foregoing paragraphs are incorporated by reference as if fully set out herein.

177.    Based on her gender and her prior complaints of discrimination, the FBI repeatedly failed to promote Plaintiff to positions for which she was qualified, interfered with her efforts to hire a Border Liaison Officer, removed Major Case 186 from her supervision, manipulated her performance evaluations, denied her bonuses to which she was entitled, repeatedly pressured her to retire, interfered with her ability to fill a supervisory position related to the investigation of Major Case 186, and interfered with her efforts to hire a Media Representative.

178.    The conduct alleged in the foregoing paragraphs constituted a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 29 U.S.C. § 2000e *et seq.*

## COUNT IV

### Age Discrimination in Violation of the Age Discrimination in Employment Act

179.    The foregoing paragraphs are incorporated by reference as if fully set out herein.

180.    Beginning in January 2007, the FBI discriminated against Plaintiff based on her age by repeatedly pressuring her to retire, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*

## Prayer for Relief

WHEREFORE, Plaintiff Laura M. Laughlin respectfully requests that this Court grant her the following relief:

A.    Instatement as an Assistant Director;

B.    Compensation for future lost wages and benefits suffered by Plaintiff because she was not appointed for any of the positions to which she applied;

C.    Emotional distress damages;

D.     Other compensatory damages;

E.     Punitive damages;

F.     Attorneys' fees and costs;

G.     Pre- and post-judgment interest; and

H.     Such other relief as law and justice allow.

Respectfully submitted,

_____
David Wachtel, Esq., D.C. Bar # 427890
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7124
(202) 745-1942

_____
Lynne Bernabei, Esq., D.C. Bar # 938936
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7124
(202) 745-1942

*Attorneys for Plaintiff Laura M. Laughlin*

Dated:  October 24, 2011

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| **LAURA M. LAUGHLIN,**<br>**2815a SW Nevada Street,**<br>**Seattle, Washington 98126,** | )<br>)<br>)<br>) |
| **Plaintiff,** | )<br>) |
| **v.** | )    **Civil Action No. _____** |
| **ERIC H. HOLDER, JR. (FBI),**<br>**950 Pennsylvania Avenue, N.W.,**<br>**Washington, D.C. 20530,** | )<br>)<br>)<br>) |
| **Defendant.** | )<br>) |

-------------------------------------------------

**PLAINTIFF'S JURY DEMAND**

Plaintiff Laura Laughlin, through undersigned counsel, demands a jury trial on all issues so triable.

Respectfully submitted,


_____
David Wachtel, Esq., D.C. Bar # 427890
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7124
(202) 745-1942


_____
Lynne Bernabei, Esq., D.C. Bar # 938936
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7124
(202) 745-1942


*Attorneys for Plaintiff Laura M. Laughlin*

DATED:  October 24, 2011