**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| **LAURA M. LAUGHLIN,** | ) |
|  | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| **v.** | ) **Civil Action No. 11-1869 (JDB)** |
|  | ) |
| **ERIC H. HOLDER, JR. (FBI),** | ) |
|  | ) |
| **Defendant.** | ) |
|  | ) |

-------------------------------------------------

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

I.    **Introduction**

Plaintiff Laura Laughlin is a 27-year veteran of the Federal Bureau of Investigation

("FBI") who has served as the Special Agent-in-Charge ("SAC") of its Seattle Division for the

past seven years.  Through this case, she seeks to address the FBI leadership's refusal to allow

her to advance in her career.  The FBI Director and his Deputy Directors have denied her

numerous promotions for which she was qualified, told her outright that she would never receive

another promotion, impeded her ability to lead the Seattle Division, made repeated comments

pressuring her to retire, and subjected her to a work environment that is deflating and hostile, all

as a result of her gender, her age, and her willingness to voice her opposition to discrimination.

Plaintiff initiated this case by making an informal complaint almost four years ago.

Following the relevant statutory and regulatory requirements, she took the case through multiple

stages of the Equal Employment Opportunity ("EEO") process: formal complaint, investigation,

and request for administrative hearing, and then filed suit in this Court.  While the Department of

Justice ("Defendant" or "DOJ") asserts that the issues raised in this case are not sufficiently like

or related to each other to comprise a single hostile work environment or to be heard in one consolidated action, a fair reading of the complaint and of the relevant regulatory language and case law – including a recent Eleventh Circuit opinion and opinions in this Circuit – makes it clear that is not the case.  Plaintiff respectfully requests that the Court hold that she has exercised her rights and exhausted her remedies in a timely manner, and order that her case proceed to discovery.

## II.   Factual and Administrative Procedural History

### A.  Factual History

Typically, the FBI promotes SACs after one to two years in a position.[1]  Plaintiff is now the second-longest serving SAC in the FBI.  On information and belief, the longest-serving SAC has not applied for another position.[2]

In 1997, Plaintiff engaged in protected conduct by filing an internal gender discrimination complaint against a high-level FBI official who assigned her trivial administrative duties even though her position description required that she be assigned investigative responsibilities.[3]  Her complaint should have been kept confidential.  Plaintiff has alleged that both the current FBI Director, Robert Mueller, and former Deputy Director John Pistole knew of her complaint because of the actions of former Associate Director T.J. Harrington.[4]  Plaintiff resolved her dispute with the FBI concerning the gender discrimination complaint in December 2003.[5]

Shortly after Plaintiff began serving as SAC of the Seattle Division, during a review of a major criminal investigation, Plaintiff discovered multiple instances of race and sex

---

[1] Compl. ¶ 5.
[2] *Id.* ¶ 7.
[3] *Id.* ¶ 14.
[4] *Id.* ¶¶ 17-18.
[5] *Id.* ¶ 19.

discrimination and insubordination directed at a Supervisory Special Agent in her division by

two white, male Special Agents.[6]  The two Special Agents had the support of a close associate of

Director Mueller and high-level DOJ officials.[7]  Plaintiff reassigned the Special Agents to other

duties and reported their discriminatory conduct to FBI leadership, who never followed up on her

complaints.[8]  During a June 5, 2006, teleconference with Director Mueller, Plaintiff again

objected to the treatment of the Supervisory Special Agent and requested the opportunity to

discuss the situation with Director Mueller.[9]  Director Mueller responded by immediately

ordering that her division be re-inspected in six months, a choice that was inconsistent with

normal FBI practice.[10]  In June 2006, the FBI also took the unprecedented step of reassigning the

management of this major case from Plaintiff's division to another division, which severely

damaged Plaintiff's reputation and interfered with her ability to lead the Seattle Division.[11]

During the re-inspection, the investigators focused on negative feedback and ignored positive

feedback concerning Plaintiff's performance as SAC.[12]  Despite this positive feedback and other

objective evidence of her success as SAC, the FBI denied Plaintiff a bonus in 2006, 2007, and

2008.[13]

　　　　Between June 2004[14] and February 2008, Plaintiff also applied, and was passed over, for

promotions to eight separate positions.[15]  The FBI rejected Plaintiff in favor of applicants who

---

[6] *Id.* ¶¶ 20-23.
[7] *Id.* ¶ 25.
[8] *Id.* ¶¶ 24, 28.
[9] *Id.* ¶ 29.
[10] *Id.* ¶¶ 29-30.
[11] *Id.* ¶¶ 96-100.
[12] *Id.* ¶¶ 101-108.
[13] *Id.* ¶ 109.
[14] Even if some of these individual discrete acts cannot be raised as timely claims for relief, they are all relevant to proving the pattern of discriminatory and retaliatory treatment to which she has been subjected.  *Id.* ¶ 42.
[15] *Id.* ¶¶ 43-68.

were predominantly male,[16] almost all of whose qualifications and experience were inferior to Plaintiff's,[17] and who had never filed charges of discrimination with the FBI.[18]

In May 2008, as if it were not clear from the fact that the FBI had denied her eight promotions in four years, then-Deputy Director Pistole explicitly told Plaintiff that she would never again be promoted within the FBI.[19]  She continued to apply for promotions to four additional positions between August 2009 and July 2010.[20]  Again, she was rejected for each of these positions in favor of applicants who were predominantly male,[21] most of whose qualifications and experience were inferior to Plaintiff's,[22] and who had never filed charges of discrimination with the FBI.[23]

The FBI interfered with Plaintiff's professional success and advancement in other ways as well.  Based on critical operational needs, she requested approval to obtain a Border Liaison Officer for the Seattle Division in 2005, a routine request that was typically granted within less than a year.  But Director Mueller's office held Plaintiff's request in abeyance without any justification and contrary to standard practice, and Plaintiff ultimately had to wait over four years to obtain approval for the position.[24]  The FBI also prevented Plaintiff from filling two other important positions in her division in 2009, contrary to protocol and without any justification or explanation.[25]

---

[16] *Id.* ¶¶ 44, 48, 51, 54, 57, 60.
[17] *Id.* ¶¶ 48, 51, 54, 57, 60, 63, 67.
[18] *Id.* ¶¶ 45, 49, 52, 55, 58, 61, 65, 68.
[19] *Id.* ¶ 113.
[20] *Id.* ¶¶ 69-87.
[21] *Id.* ¶¶ 70, 78, 84.
[22] *Id.* ¶¶ 74, 85-86.
[23] *Id.* ¶¶ 75, 79, 82, 87.
[24] *Id.* ¶¶ 88-95.
[25] *Id.* ¶¶ 116-124, 125-137.

Beginning in 2007, when Plaintiff turned 50, Deputy Director Pistole also began pressuring Plaintiff to retire, explicitly asking her when she would be retiring,[26] telling her she would never be promoted,[27] and suggesting jobs in the private sector.[28]

In 2009, Plaintiff and other female SACs joined together to address the gender-based discrimination that they had experienced in the FBI's Senior Executive Service.[29]  Plaintiff was a leader of and a vocal participant in the group.[30]  Director Mueller met with the group three times in 2009,[31] but after the last meeting, the FBI's EEO Administrator told the group members that Director Mueller would no longer entertain their concerns.[32]

All of the aforementioned conduct came from the upper tier of FBI leadership.  Plaintiff's allegations concerning this conduct raise the reasonable inference that Defendant took a series of adverse actions and created a hostile work environment, based on Plaintiff's sex, age, and prior EEO activity, in an effort to prevent Plaintiff from advancing in her career at the FBI.

### B.  Administrative Procedural History

Plaintiff contacted the Office of Civil Rights to lodge an informal complaint of discrimination against the FBI on September 25, 2008, and filed her formal complaint on December 16, 2008.[33]  On December 23, 2008, the FBI EEO Office sent Plaintiff a letter stating that it had received her complaint and would send her a subsequent letter informing her of

---

[26] *Id.* ¶¶ 111, 114.
[27] *Id.* ¶ 113.
[28] *Id.* ¶ 114.
[29] *Id.* ¶ 31.
[30] *Id.* ¶ 32.
[31] *Id.* ¶¶ 35, 36, 38,
[32] *Id.* ¶ 40.
[33] *See* Def.'s Mot. to Dismiss, Ex. D.

whether the claims were accepted.[34]  Plaintiff's charge was reassigned from the FBI EEO Office

to another DOJ agency, the Drug Enforcement Administration ("DEA").[35]

> On March 9, 2009, the DEA accepted the following claims for investigation:
>
> You claim that you have been discriminated against based on your sex (Female),
> age (9/14/57), and reprisal when management continuously harassed you, treated
> you disparately, denied you promotion opportunities from June 2004 to present.
> Additionally, Deputy Director John Pistole suggested that you retire and stated
> that you should find another job outside the FBI on August 11, 2008.[36]

The DEA did not reject any of Plaintiff's claims.  The DEA conducted an investigation and on

July 6, 2009, issued a Report of Investigation.  Plaintiff then submitted a timely request for an

EEOC hearing.

The EEOC assigned an Administrative Judge to her case nearly five months later, when

the Administrative Judge issued the first Acknowledgement and Order ("AO") on December 18,

2009.[37]  The earliest deadline the Administrative Judge imposed in the AO was on January 12,

2010, for initiating discovery.[38]  The first AO did not impose a similar deadline for amendments

to the formal complaint, stating only that "[m]otions to amend filed late in the process may be

denied."[39]  On January 6, 2010, Plaintiff filed a motion to postpone the discovery initiation

deadline, stating that she was preparing to file a motion to amend her complaint to add additional

claims.[40]  Plaintiff explained that she had submitted her motion to amend to the FBI's Civil

Discovery Review Unit for approval, as was required before dissemination for security purposes,

---

[34] *See* Letter from FBI EEO, December 23, 2008, (attached hereto Exhibit A).
[35] *See* Def.'s Mot. to Dismiss, Ex. B at 1.  The reassignment was due to a perceived conflict of interest.
[36] *Id.*
[37] *See* Acknowledgement and Order, December 18, 2009 (attached hereto as Exhibit B).
[38] *See id.* at 3.
[39] *See id.* at 4.
[40] *See* Pl.'s Mot. for Postponement of Discovery Deadline (attached hereto as Exhibit C).

but as of that date – only eight business days after receipt of the AO – she had not yet received approval.[41]

On February 1, 2010 – 39 days after receiving the AO – Plaintiff filed her first motion to amend her complaint to add the following five claims of sex discrimination and retaliation:

1.  Denial of promotion to Assistant Director of the Los Angeles Division in September, 2009.

2.  Denial of promotion to Special Agent-in-Charge of the Office of International Operations.

3.  Refusing to allow Plaintiff to fill a supervisory position on a major murder case within her administrative responsibility.

4.  Delaying Plaintiff's request to hire a Border Liaison Officer for four years.

5.  Impeding Plaintiff's replacement of her Media Representative. [42]

For over six months, the FBI failed to designate a representative or to respond to any of Plaintiff's pleadings.[43]  On September 22, 2010, the Administrative Judge stated that the Acknowledgment and Order had been sent to the wrong FBI address and issued a new AO.[44] The second AO was identical to the first in all respects described above: there still was no set deadline for filing motions to amend, but there were set periods for other matters.[45]  The second AO stated that discovery was stayed pending resolution of Plaintiff's first motion to amend.[46]  In November 2010 – 42 days after the Administrative Judge issued the second AO – Plaintiff moved to file a second amended complaint to add claims for denial of promotion to the positions

---

[41] *See id.*
[42] Def.'s Mot. to Dismiss, Ex. A at 3-4.
[43] *See* Pl.'s Mot. for Default Judgment (attached hereto as Exhibit D).
[44] *See* Acknowledgement and Order, Sept. 22, 2010 (attached hereto as Exhibit E).
[45] *See id.*
[46] *See id.*

of Assistant Director-in-Charge of the New York Office and Special Agent-in-Charge of the

Philadelphia Division.[47]

On April 25, 2011, the Administrative Judge denied Plaintiff's first motion to amend with

respect to the first, second, and third additional claims, holding:

> While a Complainant need not begin anew with EEO counseling for claims that
> are to be amended to an existing claim, timeliness issues are still in effect.
> Complainant's first motion to amend was filed February 1, 2010.  Forty-five days
> before February 1 was December 18, 2009.  Thus, any claims sought to be added
> must have occurred on or after December 18, 2009.[48]

The Administrative Judge cited no authority to support his conclusion.  Applying a forty-five day

filing period to Plaintiff's second motion to amend, the Administrative Judge denied Plaintiff's

entire second motion to amend.[49]

The Administrative Judge ruled that Plaintiff's claim that she was denied a bonus in

December 2008, as well as claims four and five of Plaintiff's first motion to amend (the claims

that the FBI took four years to approve Plaintiff's request to hire a Border Liaison Officer and

that the FBI impeded Plaintiff's replacement of her Media Representative), were timely.[50]

Therefore, the Administrative Judge ordered that the FBI conduct a supplemental investigation

of those three claims.[51]  The FBI issued a supplemental Report of Investigation on these claims

in June 2011.

Before Plaintiff filed suit in district court, the parties began to engage in limited

discovery concerning the claims subject to the FBI's supplemental investigation.  On May 11,

2011, Defendant propounded discovery requests on Plaintiff, which Plaintiff responded to on

---

[47] Def.'s Mot. to Dismiss, Ex. A at 4.
[48] *Id*. at 3-4.
[49] *Id.*
[50] *Id.*
[51] *Id.* at 5.

June 10, 2011.  On June 3, 2011, Plaintiff propounded a set of discovery requests on Defendant, which Defendant did not respond to before Plaintiff withdrew her request for an administrative hearing to file suit.

After the Administrative Judge and the FBI dismissed her claims as a result of her withdrawal request, Plaintiff timely filed this suit on October 24, 2011.

## III.   Standard of Review

### A.   Failure to Exhaust Administrative Remedies

In actions brought under Title VII and the ADEA, a court has authority over those claims (1) that are contained in the plaintiff's administrative complaint or claims "like or reasonably related to" those claims in the administrative complaint and (2) for which the plaintiff has exhausted administrative remedies.[52]  The defendant bears the burden of pleading and proving that the plaintiff failed to exhaust administrative remedies.[53]  Defendant cannot satisfy this burden with mere conclusory allegations that the plaintiff failed to exhaust her administrative remedies.[54]

### B.   Failure to State a Claim

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court accepts as true all of the factual allegations in the complaint.[55]  Thus, the court engages in a "'two-pronged approach' under which [it] first identifies the factual allegations entitled to an assumption of truth and then determines 'whether they plausibly give rise to an entitlement to

---

[52] *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Adams v. District of Columbia*, 740 F. Supp. 2d 173, 185 (D.D.C. 2010).

[53] *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) ("because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it.").

[54] *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (noting that a mere assertion of failure to exhaust administrative remedies without more is "clearly inadequate under prevailing regulations to establish a failure to exhaust administrative remedies.").

[55] *See, e.g.*, *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. __, 131 S. Ct. 1309, 1314 (2011) (the complaint "alleges the following facts, which the courts below properly assumed to be true.").

relief.'"[56]  The pleading requirements are not meant to impose a great burden on the plaintiff.[57]

The plaintiff must be given every favorable inference that may be drawn from the allegations of

fact.[58]

      As the U.S. Supreme Court recently stated in unanimously holding that the district court

improperly dismissed a complaint under Rule 12(b)(6), "to survive a motion to dismiss, [a

plaintiff] need only allege 'enough facts to state a claim to relief that is plausible on its face.'"[59]

If the plaintiff's allegations suffice "to 'allow the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged,'" then it is reversible error to grant a motion to

dismiss.[60]

      In determining whether the well-pleaded allegations in an employment discrimination

case such as this one support a plausible claim for relief the Court applies an ordinary, not a

heightened, pleading standard.[61]  A plaintiff does not have to plead facts establishing each

element of a *prima facie* case of discrimination because discovery is likely to yield additional

relevant facts.[62]  This rule remains unchanged by *Twombly* and *Iqbal*.[63]  Nevertheless, the court

may reference the elements of the claim to determine whether the plaintiff has alleged a plausible

claim.[64]

---

[56] *English v. District of Columbia*, 815 F. Supp. 2d 254, 259 (D.D.C. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)).
[57] *Harris v. Corr. Corp. of Am.*, 796 F. Supp. 2d 7, 9 (D.D.C. 2011) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-513 (2002)).
[58] *Id.* at 9 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).
[59] *Matrixx Initiatives*, 563 U.S. __, 131 S. Ct. at 1322 n.12 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[60] *Id.* at 1322 (quoting *Iqbal*, 556 U.S. at 664).
[61] *Swierkiewicz*, 534 U.S. at 512.
[62] *Id.*
[63] *See Rouse v. Berry*, 680 F. Supp. 2d 233, 236 n.3 (D.D.C. 2010) ("*Twombly* explicitly disavowed any retreat from *Swierkiewicz*, . . . and *Iqbal* did not even discuss *Swierkiewicz*, much less disavow it.").
[64] *Twombly*, 550 U.S. at 570.

C.  **Legal Standards for Plaintiff's Title VII and ADEA Claims**

For a disparate treatment claim under Title VII, after discovery, the plaintiff must show that (1) she is a member of a protected class, (2) she suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination.[65]

For a retaliation claim in violation of Title VII, after discovery, the plaintiff must show that (1) that she engaged in statutorily protected activity; (2) she suffered a materially adverse action by her employer, and (3) a causal link connects the two.[66]  The standard for adverse action is not as demanding for claims of retaliation as it is for claims of discrimination.[67]

For a hostile work environment claim in violation of Title VII, after discovery, a plaintiff must demonstrate that the "workplace is permeated with discriminatory intimidation, ridicule, and insult" and that this behavior is "sufficiently severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment."[68]  A hostile work environment must be both objectively and subjectively hostile, such that the plaintiff perceived the workplace to be hostile and a reasonable person would also find it to be so.[69]

Under the ADEA, it is unlawful for an employer to discriminate against an employee because of his or her age.[70]

IV.  **This Court Must Reject Defendant's Attempts to Argue the Facts at the Motion to Dismiss Stage.**

Defendant has tried to undercut the plausibility of Plaintiff's claims by inappropriately

---

[65] *See Chappell-Johnson v. Powell*, 440 F.3d 484, 488 (D.C. Cir. 2006).
[66] *U.S. ex. rel. Schweizer v. Oce N.V.*, 677 F.3d 1228, 1240 (D.C. Cir. 2012).
[67] *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) (holding "that the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment"); *Pardo-Kronemann v. Donovan*, 601 F.3d 599, 607 (D.C. Cir. 2010) ("[a]n employment action is materially adverse where it 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'").
[68] *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993).
[69] *See Faragher*, 524 U.S. at 787.
[70] 29 U.S.C. § 633a.

recasting the facts in its favor.[71]  Defendant relies on its own interpretations of the facts,[72]

introduces facts not referred to in the Complaint,[73] and makes arguments that amount to asking

the Court to draw inferences in its favor.[74]

      Defendant's attempts to recast material facts from the Complaint to sound in its favor

essentially serve to defeat its own motion to dismiss by confirming that the facts, as pled and

with inferences drawn for the Plaintiff, do not support this motion to dismiss.  Further, before the

Court considers Defendant's attempts to argue the facts underlying Plaintiff's complaint, it must

allow Plaintiff a reasonable opportunity to pursue discovery.[75]

---

[71] *See, e.g., Bowe-Connor v. Shinseki*, No. 10-2032 (JDB), 2012 WL 601025, at *4 (D.D.C. Feb. 24, 2012) ("[I]n passing on a motion to dismiss . . . the allegations of the complaint should be construed favorably to the pleader.")

[72] For example, Defendant asserts that the membership of the SES Boards that recommended promotions varied and that not all members knew about Plaintiff's prior EEO activity, but omits the fact that the Deputy Director chairs every SES Board.  *See* Def.'s Mot. to Dismiss at 13. Defendant asserts that "a decision ultimately was made not to fill the position" of SAC of the Office of International Operations (OIO).  *See* Def.'s Mot. to Dismiss at 2.  The Complaint, construed in Plaintiff's favor as the law requires, asserts that the position was filled, but in a way that circumvented the selection process, first with a series of detail appointments, then by upgrading the position to the Assistant Director level.  Defendant's statement that "[m]atters regarding staffing a field office involve budgetary concerns, issues of parity between field offices and issues of priority in FBI programs," *see id*. at 15-16, is Defendant's representation of the facts, which is inappropriate to support a motion to dismiss.

[73] Furthermore, Defendant asserts "it is not alleged for any selection that the SES Board ranked complainant as a top candidate and the Director selected someone else," *see id*. at 15; this is not alleged because, at this pre-discovery stage, Plaintiff is not aware of who the SES Board recommended or the basis of its recommendation for various positions.  Defendant also asserts that the individual on the SAMMS Board who "opposed filling the [position of supervisor for the investigation of Major Case 186] and influenced the Board to table the issue was a new SAC in the Division to which the case was transferred" and thus "was totally uninvolved in the prior alleged harassment." *See id*. at 15.  These assertions have no place at the motion to dismiss stage.  Discovery will reveal how the SES and SAMMS Boards formulated their recommendations in this case.

[74] Defendant states that Defendant's delay in allowing Plaintiff to fill the investigator, border liaison, and media representative positions "are the type of managerial decisions that courts are not in the business of second guessing." *See id*. at 17.  Defendant provides no support for dismissal at this stage.  *See Douglas v. Donovan*, 559 F.3d 549, 554 (D.C. Cir. 2009) (noting "we do not categorically reject a particular personnel action as nonadverse simply because it does not fall into a cognizable type  . . . ."). Similarly, Defendant's assertion that Plaintiff's hostile work environment claim "must be that she considers the actions unreasonably interfered with her job performance" is inappropriate at this stage.  *See id*. at 18.

[75] Plaintiff need not file a Rule 56(f) affidavit in order for the Court to deny the motion to dismiss on the grounds that she was not allowed discovery.  *See First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988); *Thorne v. District of Columbia*, No. 06-1204 (GK), 2006 WL 3755208, at *5 n.6 (D.D.C. Dec. 19, 2006) ("such an affidavit is not essential to preserve a Rule 56(f) contention as long as the district court was alerted to the need for further discovery.").

V. **Plaintiff Exhausted Administrative Remedies.**

As discussed in more detail below, Defendant has not met its burden of proving failure to exhaust with respect to the discrete act claims in the original complaint, the hostile work environment claim, and the claims added by amendment.[76]

A. **Plaintiff Exhausted Remedies as to Certain Discrete Title VII Violations Alleged in her Original Administrative Complaint.**

1. **Plaintiff Plausibly Alleges that She Exhausted Remedies Concerning Denial of a Management Position in the Office of International Operations.**

Defendant denied Plaintiff a promotion to lead the Office of International Operations in several steps. Plaintiff had applied for the position on August 4, 2008.[77] On August 5, 2008, two male agents were appointed to hold the position on temporary assignments.[78] On September 25, 2008, the date of Plaintiff's initial EEO complaint, the position had not yet been filled.[79] Next, the announcement was closed. In March 2009, Defendant accepted Plaintiff's entire complaint, including denial of the OIO position. In July 2009, Plaintiff learned that without open competition a male peer had been directly placed to lead OIO.[80] Three months later, on October 2, 2009, without open competition, the same male agent was elevated to Assistant Director and the Office was made a Division.[81] Plaintiff did not have an opportunity to compete for this position.

On the dates when the male agent was selected for promotions to positions in OIO, July 2009 through October 2009, Plaintiff knew that her complaint had been accepted in March 2009

---

[76] *See Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 86 (D.D.C. 2009) (citing *Brown*, 777 F.2d at 12-13; *Hudson v. Children's Nat'l Med. Ctr.*, 645 F. Supp. 2d 1, 3-4 (D.D.C.2009)).
[77] *See* Compl. ¶ 69.
[78] *See* Pl.'s Aff., May 12, 2009, Def.'s Mot. to Dismiss, Ex. C at 14.
[79] *See* Compl. ¶ 70.
[80] *See id.*
[81] *See id.* ¶ 72.

and Defendant had not yet asserted that any of her claims were untimely.  Although it would

have been reasonable for Plaintiff to rely upon the March 2009 acceptance notice and assume

that the International Operations position was a part of her accepted complaint,[82] she also added

a claim concerning the Office of International Operations position in her First Amended

Complaint, which is addressed below.

Defendant fashions a piecemeal exhaustion argument to insulate the OIO selection

process:  Defendant notes that when Plaintiff filed her complaint, only the temporary selections

had been made, and those selections had occurred approximately 50 days earlier.  But Plaintiff

was not complaining about the temporary selections, but the likelihood that exclusion from the

temporary selections meant she would not be selected for a permanent position.  And when the

process advanced to a selection of a male to lead OIO on a permanent basis, Plaintiff did not

make a second attempt to amend her complaint.  EEOC, however, has advised agencies that this

piecemeal approach is no way to address a civil rights complaint.[83]  Rather, when the Defendant

failed to advance Plaintiff's career, a single allegation would take in both temporary and

permanent promotions.  To the extent that Defendant might argue that Plaintiff first filed

prematurely concerning denial of the OIO position, a premature filing may be cured.[84]

### 2.  Plaintiff Plausibly Alleges that She Exhausted Remedies Concerning Denial of her Bonus in 2008.

Defendant denied Plaintiff a performance bonus in December 2008, despite performance

that was equal or superior to the performance of SACs who received bonuses.  Under Plaintiff's

leadership, the Seattle Division has been recognized with two Director's Awards and two awards

---

[82] *Hutchinson v. Holder*, 668 F. Supp. 2d 201, 214 n.8 (D.D.C. 2009) (citing *Jarrell v. U.S. Postal Serv.*, 753 F.2d 1088, 1092 (D.C. Cir. 1985)) (finding that failure to comply with administrative requirements under Title VII "may be excused if it is the result of justifiable reliance on the advice of another government officer.")

[83] *See* EEOC Management Directive 110 ("MD 110") Ch. 5(III) ("The fragmentation, or breaking up, of a complainant's legal claim during EEO complaint processing has been a significant problem in the federal sector.").

[84] *Williams v. Wash. Metro. Area Transit Auth.,* 721 F.2d 1412, 1418 n.12 (D.C. Cir. 1983); *Cruz-Packer v. District of Columbia*, 539 F. Supp. 2d 181, 190 (D.D.C. 2008).

from the Attorney General for excellence in investigations and intelligence protocols that have

been implemented Bureau-wide.[85]

The EEOC Administrative Judge accepted Plaintiff's inclusion of the bonus denial in her

formal EEOC complaint, even though Plaintiff did not raise the issue in EEO counseling,

because the denial of the bonus was "like or related to the accepted issues."[86]  Denial of a

performance bonus "could reasonably have been expected to grow out of" Plaintiff's claims of

continuous harassment and denial of other opportunities afforded to other SACs, including

promotion opportunities.[87]  The Administrative Judge was correct in finding that denial of the

December 2008 bonus should be accepted as timely.  Plaintiff therefore exhausted administrative

remedies as to the 2008 bonus claim.

## B.  Plaintiff Exhausted Administrative Remedies as to Her Hostile Work Environment Claim in the Original Administrative Complaint.

Plaintiff's claim of hostile work environment in the original complaint was timely under

the continuing violations theory.  Hostile work environment claims "are different in kind from

discrete acts . . . [b]ecause their very nature involves repeated conduct."[88]  A hostile work

environment claim is composed of a series of separate acts that collectively constitute a single

"unlawful employment practice."[89]  A hostile work environment claim is timely, therefore, as

long as an act contributing to the claim occurs within the filing period.[90]  As discussed above,

Plaintiff exhausted administrative remedies with respect to several discrete acts that form part of

---

[85] *See* Compl. ¶ 109.
[86] *See* Administrative Judge Order, April 25, 2011, Def. Mot. to Dismiss Ex. A, at 2-3.
[87] *See Wiley v. Glassman*, 511 F.3d 151, 160 (D.C. Cir. 2007) (finding plaintiff's original complaint of denial of "career advancement" opportunities broad enough to allow amendment to add any kind of career advancement issue); *Weber v. Battista*, 494 F.3d 179, 184 (D.C. Cir. 2007).
[88] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002).
[89] *Id*. (citing 42 U.S.C. § 2000e-5(e)(1)).
[90] *Id.*; *see also Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011) ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

her hostile work environment claim.  The D.C. Circuit made clear in *Baird v. Gotbaum* that a plaintiff can rely on the same discrete acts to support claims of discrimination and retaliation that the plaintiff relies on for a hostile work environment claim.[91]

In addition, Plaintiff filed her informal complaint on September 25, 2008, which was within 45 days of Deputy Director Pistole asking Plaintiff when she would retire and suggesting she find a job in the private sector on August 11, 2008.[92]  This incident is like and related to the other incidents and discrete acts that created a hostile work environment.  With respect to the non-promotions claims, Deputy Director Pistole was the chair of the SES Board, which reviewed applications for promotions.  With respect to other incidents of verbal harassment, it was Deputy Director Pistole who had earlier told Plaintiff that she would never get promoted and suggested she retire.[93]  Because the last of these acts was within 45 days of Plaintiff's filing her informal EEO complaint, the entire allegation of hostile work environment is timely including, pursuant to *Baird*, the denials of promotions, which formed part of that hostile work environment.[94]

## C. Plaintiff Exhausted Her Administrative Remedies as to All Claims in Her First and Second Amendments to her Administrative Complaint.

### 1. Plaintiff Properly Exhausted her Remedies in the First and Second Amended Administrative Complaints Under the 45-day Rule.

One factual point and one legal point – neither of which Defendant disputes – show Plaintiff properly filed her amended claims and in so doing timely exhausted her administrative remedies on those claims.  First, DOJ accepted for investigation all of the claims in Plaintiff's

---

[91] *See Baird*, 662 F.3d at 1252.

[92] *See* Def.'s Mot. to Dismiss, Ex. D; Compl. ¶ 114.

[93] *See* Compl. ¶¶ 110-15.

[94] *See Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 106 n.10 (D.D.C. 2005) (observing that exhaustion of administrative remedies for hostile work environment claims is less stringent than for discrete claims of discrimination or retaliation, in that a plaintiff "need only have filed an EEOC complaint alleging some of the claims that comprise the hostile work environment claim.").

original formal complaint.[95]  Second, as a legal matter, the 45-day rule for initiating *new* informal complaints does not set the time for filing *amended* complaints.[96]  The 45-day rule does not apply to motions to amend to add claims that are like or related to the original claim.[97]  There is no set time period within which amendments must be filed,[98] and Plaintiff filed her amendments long before discovery commenced in the administrative process.  Indeed, she filed her first motion to amend her complaint before DOJ even filed an appearance in her case, and she filed her second motion to amend her complaint while discovery was stayed.  Her motions to amend therefore caused Defendant no prejudice.

In 2010, Plaintiff reasonably believed she could amend her complaint rather than filing new complaints.  After Plaintiff had filed her formal complaint, Defendant responded with two letters.  The first, on December 23, 2008, stated that Plaintiff's complaint had been received and that she would be sent a subsequent letter informing her of whether the claims were accepted.[99]

---

[95] *See* Def.'s Mot. to Dismiss, Ex. B.

[96] *See* 29 C.F.R. § 1614.105(a).

[97] *See Ramirez v. Sec'y, U.S. Dep't of Transp.*, 2012 WL 2849264, at *11 n.4 (11th Cir. July 12, 2012) ("The ALJ denied Ramirez's request to amend his complaint on the ground that Ramirez did not contact an EEO Counselor within forty-five days of when he knew or reasonably should have known of the factual basis for his non-selection claim.  We agree with Ramirez that it was error for the ALJ to apply the 45–day rule to his motion to amend.  The regulations provide that, after a hearing is requested, a complainant may move to amend his complaint to include 'issues or claims like or related to those in the complaint.' 29 C.F.R. § 1614.106(d).  It is now apparent that the non-selection claim was inarguably related to the pay claim.  The EEOC has explained (and case law confirms) that a claim 'like or related to' the original claim is *not* subject to the 45–day counseling requirement. *See, e.g., Weber v. Battista*, 494 F.3d 179, 183 (D.C. Cir. 2007) (explaining that if a new claim is related to the original claim '[t]here is no requirement that the amendment be subject to counseling') (quoting *Core v. Brownlee*, Appeal No. 01A34550, 2004 WL 189570, at *1 (E.E.O.C. Jan. 23, 2004).').").

[98] 29 C.F.R. § 1614.106(d) states that "[a] complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint.  After requesting a hearing, a complainant may file a motion with the administrative judge to amend a complaint to include issues like or related to those raised in the complaint;" *accord* EEOC Mgmt. Directive 110, Ch. 5(III)(B).  In considering motions to amend complaints, EEOC Administrative Judges are directed to "consider [the amendment's] impact on the existing claim, including when the amendment was brought to his/her attention and whether there will be any potential harm to the agency resulting from surprise."  EEOC Handbook for Administrative Judges, Ch. 1(II)(B).  Both AOs issued by the Administrative Judge in this case imposed no deadline for filing motions to amend, stating only that "[i]n order to amend the complaint, the complainant shall submit a motion as early as possible to the Administrative Judge" and that "[m]otions to amend filed late in the process may be denied."  December 18, 2009 AO (Ex. B) at 4; September 22, 2010 AO (Ex. E) at 4.

[99] *See* Ex. A.

EEOC regulations required Defendant to send this letter.[100]  Then, on March 9, 2009, Defendant

sent a second letter, which accepted all of the issues that Plaintiff filed.[101]  EEOC regulations

provide that the employer should send letters of this type.  Defendant did not take the position

that any part of her complaint was untimely until eighteen months later, on October 15, 2010,

when it filed its first motion to dismiss with the EEOC Administrative Judge.

Plaintiff was entitled to rely on the acceptance of the complaint by the government.  This

Court faced a similar issue in *Hutchinson v. Holder*, when the defendant asserted that an EEOC

Administrative Judge had erred by allowing the plaintiff to amend her claim.  The court held that

the plaintiff could rely on the ALJ's decision to amend her EEOC charge by adding a new claim

and therefore excused the fact that she had not contacted an EEO counselor to start the process of

bringing a new complaint.[102]  Here, because DOJ had accepted the original complaint as timely,

Plaintiff reasonably based her First and Second Amended Complaints on that ruling.  Plaintiff

followed EEOC regulations and guidance which instruct that employees should file amendments

rather than new complaints because complaints should not be fragmented unnecessarily.[103]

In filing her amendments, Plaintiff correctly believed that she was under no compunction

to make her filings within 45 days of each adverse action.  The regulations governing filing new

and amended complaints must be interpreted in light of Title VII, under which exhaustion

requirements are "'practical and pragmatic' . . . and should not be invoked when [they] serve[ ]

no practical purpose."[104]

---

[100] *See* 29 C.F.R. § 1614.106(e).

[101] The Defendant notes that the acceptance letter is from the Drug Enforcement Agency (DEA) not the FBI, but that is of no consequence because the Defendant here is DOJ, not one of its constituent agencies.

[102] *Hutchinson*, 668 F. Supp. 2d at 214 n.8.

[103] *See* MD 110 Ch.5(III)("The fragmentation of EEO claims must be prevented at all levels of the complaint process, including pre-complaint EEO counseling.").

[104] *Nurriddin v. Bolden*, 674 F. Supp. 2d at 87 (citing *Bowden*, 106 F.3d at 438-39) (quoting *Wilson v. Pena,* 79 F.3d 154, 165 (D.C. Cir. 1996))).

The 45-day rule is contained in 29 C.F.R. § 1614.105(a), which covers original informal complaints. Section 1614.106(d) covers amendments and does not specify any number of days within which amendments must be filed. Amendments during investigations may be made "at any time."[105] As a practical matter, amendments after a hearing request cannot be filed until an administrative judge is assigned, since the regulations state that a complainant "may file a motion with the administrative judge to amend . . . ."[106] Plaintiff did not have an administrative judge assigned to her case during the time that the AJ has ruled she should have filed her amendments, and therefore, she could not have "file[d] a motion with the administrative judge to amend."[107]

This Court has previously considered and rejected DOJ's argument that the 45-day period in § 1614.105(a)(1) should be inferred into § 1614.106(d).[108] In at least that case and another, EEOC AJs had granted motions to amend to address adverse actions occurring significantly more than 45 days before the motions were filed.[109] Defendant itself has acknowledged that the 45-day rule does not, on its face, apply to amendments.[110]

Furthermore, if this Court were to find that the 45-day time limit should apply to amendments, it would still be proper to deny this part of the motion to dismiss because Plaintiff was not aware that EEOC Administrative Judge would apply the 45-day rule to amendments.

---

[105] 29 C.F.R. § 1614.106(d).

[106] *Id.*

[107] *See id.*

[108] *Jones v. Greenspan*, 402 F. Supp. 2d 294, 298 (D.D.C. 2005).

[109] *See Jones*, Civil Action No. 04-1696, Pl.'s Opp'n to Def.'s Mot. to Dismiss and for Summ. J. at 8 (Aug. 30, 2005), Docket No. 16, Ex. 27 (Administrative Judge granted June 2002 motion to amend to add claims regarding 2000, 2001, and 2002 evaluations); *Hutchinson*, 668 F. Supp. 2d 201, 212-13 (D.D.C. 2009) (Administrative Judge granted leave to amend to address a "promotion denied five (5) months before the motion for leave to amend"). In *Hutchinson*, as in this case, complainant-plaintiff was an FBI employee. In *Jones*, complainant-plaintiff worked for the Federal Reserve and informed the District Court that the Administrative Judge had held, "the amendment provisions are silent on whether like or related provision can be time barred. Absent such a provision, I find that as long as the incidents are 'like or related,' they are not time barred." Exhibit A at *5 n.5.

[110] FBI's Opp'n to Complainant's Mot. to Reconsider Partial Denial of Leave to Amend (attached hereto as Exhibit F), at 7. The FBI admitted that whether such a rule applies to amended claims is a "legal grey area." *Id.*

This Circuit has held that, consistent with EEOC regulations, the 45-day rule does not apply when a complainant is unaware of it.[111]

Finally, although application of the 45-day rule to amendments is not practical or pragmatic in any case, it is particularly impractical here, where the delay in filing Plaintiff's first amendment was because the FBI's Civil Discovery Review Unit had not yet approved of the filing, a matter beyond Plaintiff's control.

### 2. The Claims in the First and Second Amended Administrative Complaints Were "Like or Related" to the Claims in the Original Complaint.

Further, the claims Plaintiff included in her First and Second Amended Administrative Complaints were "like or related" to the claims in Plaintiff's original complaint.[112]  A plaintiff may amend a complaint to include issues like or related to those raised in her original complaint.[113]  "Like or related claims" are those that "could have reasonably been expected to

---

[111] 29 C.F.R.§ 1614.105(a)(2); *see Harris v. Gonzales*, 488 F.3d 442, 444 (D.C. Cir. 2007) (holding that "Given subsection (a)(2)'s mandatory language-'the agency . . . shall extend the 45-day time limit'-we agree with Harris that the agency must grant an extension if the employee shows that she 'was not notified' or 'otherwise aware' of the time limit.").

[112] In her First Motion to Amend, Plaintiff sought to amend her complaint to add five claims: 1) that Defendant discriminated against her on the basis of her sex and retaliated against her in response to her complaint when a male with lesser or equal qualifications was chosen over Plaintiff for the position of Assistant Director of the Los Angeles Division in September 2009; 2) that Defendant discriminated against her on the basis of her sex and retaliated against her in response to her complaint when it failed to select her for the position of SAC of the OIO in October 2009; 3) that Defendant retaliated against Plaintiff on September 9, 2009 when the SAMMS Board tabled a supervisory position that Plaintiff was responsible for filling, which prevented her from fulfilling her job responsibilities for Major Case 186; 4) that Defendant took four years to approve Plaintiff's request for a Border Liaison Officer because of discriminatory or retaliatory animus; and 5) that Defendant impeded Plaintiff's replacement of her Media Representative because of discriminatory or retaliatory animus.  Pl.'s First Motion to Amend Complaint at 3-4.  In her Second Motion to Amend, Plaintiff sought to amend her complaint to add two claims: 1) Defendant retaliated against Plaintiff in response to her earlier complaint of discrimination by selecting a female who had never filed a complaint of discrimination, over Plaintiff for the position of Assistant Director-in-Charge of the New York Office in August 2010, despite the fact that the selected individual's qualifications were lesser than or equal to those of Plaintiff; and 2) Defendant discriminated against Plaintiff on the basis of her sex, and retaliated against her in response to her earlier complaint of discrimination, by selecting a male who had never filed a complaint of discrimination, over Plaintiff for the position of SAC of the Philadelphia Division in September 2010, despite the fact that his qualifications were lesser than or equal to those of Plaintiff.  Pl.'s Second Motion to Amend Complaint at 4.

[113] 29 C.F.R. § 1614.106(d); *see also* EEOC Management Directive 110, Ch. 5(III)(B) ("After the complainant has requested a hearing, s/he may file a motion with the Administrative Judge to amend the complaint to include claims that are like or related to those raised in the pending complaint.  This situation most frequently occurs when an alleged discriminatory incident occurs after the filing of an EEO complaint . . . .  A separate EEO complaint is not

grow out of the original complaint."[114]  The question of whether claims are "like or related" may

be a question of fact and therefore may be best resolved on summary judgment, not at the motion

to dismiss stage.[115]

    After Plaintiff filed her original complaint, Defendant continued to discriminate against

her on the basis of her sex and age by continuing to deny her promotions and by impeding her

ability to fill subordinate positions.  The amendments Plaintiff added regarding her non-

promotions are "like or related" to the initial claims of non-promotion in the original complaint,

as they represent the same course of conduct and implicate many of the same decisionmakers –

Director Mueller and his Deputy Director.  The amendments Plaintiff added regarding Defendant

impeding her ability to fill three subordinate positions are also "like or related" to the claims in

her initial complaint; these amendments also reflect actions taken by many of the same

individuals out of discriminatory and retaliatory animus.  Because Plaintiff's amended claims are

like or related to those in her original complaint, Plaintiff exhausted administrative remedies as

to those claims by adding them as amendments.[116]

---

appropriate . . . if the new incident of discrimination raises a claim that is like or related to the original complaint.
Rather, the original complaint should be amended to include the new incident of discrimination."); EEOC Handbook
for Administrative Judges, Ch. 1(II)(B) ("EEOC regulation 29 C.F.R. 1614.106(d) authorizes Administrative Judges
to rule on motions to amend complaints.").

[114] *See Weber*, 494 F.3d at 184; *see also Wiley*, 511 F.3d at 160 (holding that claim that defendant reduced the
airtime of plaintiff, a radio broadcaster, could have reasonably been expected to grow out of her earlier complaint
concerning the denial of training, denial of input on programming and policy, and denial of career advancing
opportunities); *Hazel v. Wash. Metro. Area Transit Auth.*, 2006 WL 3623693, at *6 (D.D.C. Dec. 4, 2006) (ruling
that the plaintiff's 2000 sex and race discrimination claims, which the plaintiff had withdrawn and attempted to
reinstate, were "more than reasonably related to [plaintiff's] 2001 charge [alleging ongoing retaliation], and they
were exhausted by the 2001 charge.") (citing *Park*, 71 F.3d at 907-09; *Lane v. Hilbert*, 2004 WL 1071330, at * 1
(D.C. Cir. May 12, 2004)); *id.* at *8 (holding that plaintiff's amended claims of retaliatory non-selections and
termination grew out of her 2000 and 2001 claims of retaliatory non-selections and attempts to set her up for
termination, and that therefore, there was no exhaustion requirement for her additional claims).

[115] *Compare Bell v. Donley*, 724 F. Supp. 2d 1, 12 (D.D.C. 2010) (ruling on partial motion for summary judgment
and finding plaintiff's amended claims not "like or related" to the original claims) *with Smith-Thompson v. District
of Columbia*, 657 F. Supp. 2d 123, 137-38 (D.D.C. 2009) (holding that the incompleteness of the factual record
made it impossible to determine whether allegations were like or related, and denying defendant's motion to
dismiss).

[116] *See Emory v. United Air Lines, Inc.*, 821 F. Supp. 2d 200, 227 (D.D.C. 2011) (citing *Peters v. Renaissance Hotel
Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002) ("there must be a factual relationship between the claims asserted

**VI.**     **Plaintiff Has Properly Pled Her Claims of Discrimination and Retaliation.**

    **A.  Discrete Acts**

After arguing that Plaintiff's claims are untimely and/or are not "like or related" to the claims in her original complaint, Defendant states, without any further explanation, that "even if the claims relating to a) filling a position not under her supervision,[117] b) obtaining a border liaison [officer], and c) obtaining a media representative are timely, they are not the kind of discriminatory or retaliatory action that can support a claim under Title VII.  First, they are discrete acts, but more significantly, they are the type of managerial decisions that courts are not in the business of second guessing."[118]  These three claims are the only discrete acts for which Defendant asserts Plaintiff has failed to state a claim.  The only case that Defendant cites in support of the proposition that these three claims are "the type of managerial decisions that courts are not in the business of second guessing" is *Faragher v. City of Boca Raton*, which held, in articulating the proper scope of a hostile work environment claim, that the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code.  Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."[119]

---

in the judicial complaint and the claims alleged in the EEOC charge . . . This means that the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*.") (internal quotation marks omitted) (emphasis in original).); *Twisdale v. Snow*, 2005 WL 4600225, at *6 (S.D. W.Va. Aug. 17, 2005) ("Retaliation is retaliation.  Each act of reprisal does not have to be identical to each other.  Then there is the fact that the same official is involved in committing the retaliation/harassment.  This can only strengthen the similarity of the claim.").

[117] Although Defendant does not specify what claim it is referring to, presumably it is referring to Plaintiff's claim that Defendant refused to fill a vacant Supervisory Special Agent position on a major murder investigation under her administrative responsibility.  *See* Compl. ¶¶ 116-24.

[118] Def.'s Mot. to Dismiss at 17.

[119] 524 U.S. 775, 788 (1998) (internal quotation marks and citations omitted).

But Defendant does not allege that Plaintiff's claims that Defendant impeded her ability to fill these positions constitute an attempt to enforce a "general civility code" or a complaint about "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." The principle articulated in *Faragher* simply does not apply to these three claims, and Defendant does not even argue that it does. When this court has addressed restrictions on supervisory authority at the motion for summary judgment stage – where the burden on the plaintiff is higher than at the motion to dismiss stage – it has found that adverse actions such as the ones Plaintiff complains of do fall within the scope of Title VII.[120]

Defendant *does* argue, without any elaboration or legal support, that these claims concern "the type of managerial decisions that courts are not in the business of second guessing."[121] Title VII contains no shield, however, for "managerial decisions." Indeed, the employment actions specifically addressed in the text of Title VII, such as discharge or promotion, arise from managerial decisions.[122] While "*nondiscriminatory* conditions of employment falling within the ambit of managerial decision to promote the best interests of its business" of course cannot give rise to a Title VII claim,[123] Plaintiff in this case has pled that discriminatory and retaliatory animus motivated Defendant's employment decisions. There is no basis for dismissing these claims, particularly at this stage of the proceedings, simply because they involved "managerial decisions."

---

[120] *See Kalinoski v. Gutierrez*, 435 F. Supp. 2d 55, 65 (D.D.C. 2006) (Bates, J.) (removal of supervisory responsibilities is a tangible employment decision that can give rise to a Title VII claim); *see also Allen v. Napolitano*, 774 F. Supp. 2d 186, 204 (D.D.C. 2011) (Bates, J.) ("The removal and reassignment of an employee's supervisory responsibilities can be considered materially adverse in some contexts.") (citing *Burke v. Gould,* 286 F.3d 513, 522 (D.C. Cir. 2002)); *Wiley*, 511 F.3d at 157 (holding that denial of the opportunity to act as an interim managing editor "surely qualifie[d] as an adverse employment action.").

[121] Def.'s Mot. to Dismiss at 17.

[122] *See Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (quoting *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006)) ("[W]e do not categorically reject a particular personnel action as nonadverse simply because it does not fall into a cognizable type.").

[123] *Antrum v. Wash. Metro. Area Transit Auth.*, 710 F. Supp. 2d 112, 119 (D.D.C. 2010) (Bates, J.) (quoting *Brown v. D.C. Transit Sys., Inc.*, 523 F.2d 725, 728 (D.C. Cir. 1975)) (emphasis added).

Without citation, Defendant vaguely alludes to holdings in this Circuit that "Title VII . . . does not authorize a federal court to become a superpersonnel department that reexamines an entity's business decisions,"[124] but these decisions also hold that courts "may not second-guess an employer's personnel decision absent demonstrably discriminatory motive."[125]  The point of this holding is not that Title VII cases addressing managerial decisions do not survive motions to dismiss; it is that Plaintiffs must plead and then prove "demonstrably discriminatory motive." Plaintiff has pled that and is entitled to discovery to prove it.  There is no justification for holding that Plaintiff has failed to state a claim with respect to these three adverse employment actions.

**B.  <u>Hostile Work Environment</u>**

Whether conduct in a work environment is objectively "hostile or abusive" depends on a variety of factors, which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[126]

**1.  Plaintiff has Alleged Facts that Will Show Harassment Pervaded her Workplace.**

Plaintiff has alleged a hostile work environment based on the conduct of Defendant over the past several years.  After twenty-seven years in the FBI, Plaintiff has worked her way up to a position with a high level of responsibility, only to find that she no longer has the opportunity for advancement that her peers have (hence the multiple denials of promotion), she no longer has control of all Bureau operations in her jurisdiction (hence the transfer of Major Case 186), she does not have the same opportunity to staff her office that her peers have (hence the long delays

---

[124] *Holloman v. Chertoff*, 533 F. Supp. 2d 162, 174 (D.D.C. 2008) (ruling on a motion for summary judgment) (citing *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (reversing district court's grant of judgment as a matter of law after trial)).
[125] *Id.* (citing *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996)).
[126] *See Harris*, 510 U.S. at 23.

in filling the Border Liaison Officer, Media Representative, and Supervisory Special Agent positions), and – as a combined effect of all of these matters – she is not respected as a leader by her subordinates and management chain in the way that SACs normally are.

Defendant's argument that Plaintiff "does not describe severe and pervasive conduct, but instead raises a seemingly unrelated series of complaints about her work environment" is incorrect.[127]  "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."[128]  The relationships between the events establishing Plaintiff's hostile work environment claims are established by these surrounding circumstances (the promotions and respect afforded to other SACs) and expectations (of control over Bureau matters in her Division and staffing to meet Bureau needs).

In support of its argument, Defendant cites *Baird v. Gotbaum*[129] and *Mason v. Geithner*,[130] but both of these cases are inapposite to Plaintiff's case.  *Baird* involved a plaintiff who relied on four discrete acts as the basis for her discrimination, retaliation, and hostile work environment claims.[131]  The district court granted a Rule 12(b)(6) motion as to the entire case, holding in part that a plaintiff could not rely on the same particular acts to support both discrimination and hostile work environment claims.[132]  The District of Columbia Circuit reversed and remanded as to the hostile work environment claims, holding that a plaintiff could rely on discrete claims of discrimination or retaliation to support a hostile work environment

---

[127] *See* Def.'s Mot. to Dismiss at 19.
[128] *See Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81-82 (1997).
[129] 662 F.3d at 1252.
[130] 811 F. Supp. 2d 128, 178-79 (D.D.C. 2011).
[131] 662 F.3d at 1252.
[132] *Id.* at 1253.

claim.[133] Here, Plaintiff's claims of discrimination and retaliation[134] can also support her hostile work environment claim.

Defendant's reliance on *Mason* is similarly unpersuasive. The *Mason* plaintiffs, after discovery, failed to meet the summary judgment standard for showing a hostile work environment. For example, one of the plaintiffs identified fourteen incidents to support her hostile work environment claim, which ranged from a physical altercation with a co-worker to unprofessional phone calls made by her supervisors, to the failure to permit her to have a union representative at a meeting for her non-disciplinary termination.[135] The court held that a plaintiff who adopts a "kitchen sink approach" to crafting a hostile work environment claim must explain how her claim works under that theory.[136] In *Mason*, after discovery, the plaintiff had failed to make any attempt to "crystallize for the Court how these disparate acts could be seen by a trier of fact as sufficiently related to coalesce into a single hostile work environment." The court concluded that the acts were too different in kind to constitute a hostile work environment claim.[137]

In contrast, Plaintiff has alleged facts that cohere into a hostile work environment. As an SAC, she is at a high level within the FBI and the decisions that led to the acts that make up the hostile work environment were centralized at the Director and Deputy Director level. Plaintiff's hostile work environment claim is based on decisions made by a small group of FBI executives that resulted in twelve failures to promote her to positions for which she was qualified;[138]

---

[133] *Id.* Defendant cites *Baird* for the proposition that unrelated discrete acts cannot support a hostile work environment claim, apparently ignoring the fact that the District of Columbia Circuit remanded the case without reaching the merits of the hostile work environment claim. *See Baird*, 622 F.3d at 1253.
[134] *See* Compl. ¶¶ 152-75; 179-80.
[135] *See Mason*, 811 F. Supp. 2d at 177.
[136] *Id.*
[137] *Id.*
[138] Compl. ¶¶ 42-87.

interference with her efforts to hire three key employees;[139] removal of a major case from her supervision;[140] manipulation of at least one performance evaluation and denial of three bonuses to which she was entitled;[141] and repeated pressure to retire.[142]  Failure to promote and repeated questioning about retirement plans can support the existence of a hostile work environment.[143]  Discovery in this case will also show that serving as an SAC of the same division for seven years, while nearly all of one's peers are promoted, can be objectively and subjectively humiliating.  Taken together and viewed in the light most favorable to Plaintiff, the allegations of Defendant's conduct are sufficient to survive a motion to dismiss for failure to state a claim.

### 2. Defendant's Actions Unreasonably Interfered with Plaintiff's Work Performance.

At the motion to dismiss stage, a claim must state a plausible claim for relief.  It is plausible (at the very least) that the constellation of circumstances Defendant perpetrated against Plaintiff unreasonably interfered with Plaintiff's work performance.[144]  The repeated pressure to retire to which Plaintiff was subjected has undermined her confidence.[145]  Defendant's reassignment of a major case damaged Plaintiff's reputation within the FBI; the harm to her reputation was compounded by the reappointment of the Special Agents who had defied her authority.[146]  The SAMMS Board's tabling of Plaintiff's request to replace the supervisor of the Major Case 186 investigation detrimentally affected Plaintiff's ability to carry out her law

---

[139] *Id.* ¶¶ 88-95; 116-25; 125-37.

[140] *Id.* ¶¶ 96-100.

[141] *Id.* ¶¶ 101-09.

[142] *Id.* ¶¶ 110-15.

[143] *See Wise v. Ferriero*, No. 10-1899 (JEB), 2012 WL 336161, at *7 (D.D.C. Feb. 3, 2012) (failure to promote); *Lawson v. Pepco*, 721 F. Supp. 2d 1, 6 (D.D.C. 2010) (noting that "questioning of plaintiff about retirement plans could arguably be connected to plaintiff's age," but finding the hostile work environment claim failed because the plaintiff was only questioned about retirement once).

[144] *See Harris*, 510 U.S. at 23.

[145] Compl. ¶ 115.

[146] *Id.* ¶ 100.

enforcement responsibilities.[147]  Defendant's interference with Plaintiff's hiring of a Media

Representative impeded her ability to maintain a strong and effective media program as the 2010

Winter Olympic Games in Vancouver approached.[148]  Defendant's interference with Plaintiff's

hiring of a Border Liaison Officer impeded Plaintiff's ability to properly manage the Seattle

Division.[149]  Combined, these actions resulted in unreasonable interference with Plaintiff's work

performance.[150]

       Plaintiff's hostile work environment claim is based partly on the unreasonable

interference with her work, but Defendant wrongly asserts that "must be" the sole basis for her

hostile work environment claim.[151]  First, Defendant's contention of what the basis of Plaintiff's

claim "must be" is inappropriate in a motion to dismiss.  In ruling on a 12(b)(6) motion to

dismiss for failure to state a claim, the court must determine only whether the plaintiff's

allegations plausibly give rise to an entitlement of relief.[152]  Defendant cannot recast the facts in

its own favor.  Second, this argument ignores the Supreme Court's directives in *Harris* and

*Oncale* that lower courts evaluate the totality of the circumstances – not simply one factor in the

*Harris* list – in evaluating harassment claims.  As discussed above, the hostile work environment

Plaintiff experienced is based on the totality of Defendant's conduct, not solely the interference

with her work performance.

---

[147] *Id.* ¶ 123.

[148] *Id.* ¶ 135.

[149] *Id.* ¶ 93.

[150] Defendant's assertion that Plaintiff 's receipt of positive performance reviews and awards makes it "hard to believe" that the matters at issue unreasonably interfered with her work performance represents a factual dispute that is inappropriate in a motion to dismiss.  *See* Def.'s Mot. to Dismiss at 19.  The receipt of positive performance reviews can also buttress, rather than undermine, a discrimination claim.  *Kalinoski*, 435 F. Supp. 2d at 72 ("Given the uncontroverted evidence of plaintiff's stellar performance reviews, her substantial experience, and her score relative to Mr. Flynn on the objective qualifications evaluation—along with the different rationales offered by defendant for this action as compared with the closely related reassignment action—the Court concludes that plaintiff has come forward with enough evidence to create a genuine issue of material fact about whether defendant's proffered rationale was the real reason defendant declined to select plaintiff for the position.").

[151] *See* Def.'s Mot. to Dismiss at 18.

[152] *Iqbal*, 556 U.S. at 664.

Finally, while the allegations in Plaintiff's complaint are detailed and factual, the full scope of these circumstances, expectations, and relationships will not be fully known until after discovery.  Plaintiff has pled "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting her claims.[153]  At the motion to dismiss stage, the plaintiff is required to plead facts that render her claim of hostile work environment plausible, not necessarily all of the facts that establish that claim.[154]  Plaintiff is entitled to discovery to reveal additional facts to support her claims of hostile work environment.  Therefore, 12(b)(6) dismissal of a hostile work environment claim such as this is particularly inappropriate.

### C.  **Plaintiff Has Alleged a Plausible ADEA Claim.**

Defendant claims that Plaintiff's ADEA claim should be dismissed "because merely inquiring as to possible retirement dates does not rise to the level of an adverse employment action."[155]  Each of the opinions that Defendant cites in support of this proposition concern motions for summary judgment or post-trial motions, where the plaintiff's burden is significantly higher than it is at the motion to dismiss stage.

Defendant cites no authority to support its assertion that Plaintiff's allegation that Defendant repeatedly pressured her to retire fails to state a claim under the ADEA.  Indeed, it is well-established that repeatedly pressuring an employee to retire can give rise to an age discrimination claim.[156]  To the extent Defendant argues that the Court should dismiss Plaintiff's

---

[153] *See Owens v. Republic of Sudan*, 531 F.3d 884, 895 (D.C. Cir. 2008) (citing *Twombly*, 550 U.S. at 556); *see also Wise*, 2012 WL 336161, at *6  (finding plaintiff's identification of "myriad incidents" including denied promotions sufficient to survive motion to dismiss on hostile work environment claim).

[154] *See Holmes-Martin v. Leavitt*, 569 F. Supp. 2d 184, 193 (D.D.C. 2008) (denying motion to dismiss plaintiff's hostile work environment claim because plaintiff pled adequate facts to support her claim even though the facts were inadequate to establish her claim).

[155] Def.'s Mot. to Dismiss at 20.

[156] *See Kaniff v. Allstate Ins. Co.*, 121 F.3d 258, 263 (7th Cir. 1997) ("repeated references to retirement may permit a jury to infer discrimination, as the comments may reflect the employer's intention to rid itself of older workers by subtly pressuring them into retiring") (citing *Greenberg v. Union Camp Corp.*, 48 F.3d 22, 28-29 (1st Cir. 1995) ("repeated and/or coercive inquiries can clearly give rise to a reasonable inference of an anti-age bias (and lend

ADEA claim because it does not allege an adverse employment action, that argument is premature at the motion to dismiss stage.[157]   As a result, Defendant's motion to dismiss Plaintiff's ADEA claim must fail.[158]

## VII.   <u>Conclusion</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss.

Respectfully submitted,

_____/s/_____
David Wachtel, Esq., D.C. Bar # 427890
Eliza Dermody, Esq., D.C. Bar # 1001530
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7124
(202) 745-1942

*Attorneys for Plaintiff Laura Laughlin*

Dated:  July 19, 2012

---

support to a finding of constructive discharge)"); *Sischo-Nownejad v. Merced Comm. Coll. Dist.*, 934 F.2d 1104, 1108, 1112 (9th Cir. 1991); *Wilson v. Cox*, 828 F. Supp. 2d 20, 34 (D.D.C. 2011) (noting that comments about older people can suggest improper stereotypes based on age); *Miller v. Hartford Fire Ins. Co.*, 652 F. Supp. 2d 220, 233 (D. Conn. 2009) (holding that a rational trier of fact could find supervisors' references to employee's retirement were evidence of age-related animus); *Braverman v. Penobscot Shoe Co.*, 859 F. Supp. 596, 601 (D. Me. 1994) (plaintiff's allegation that his employer repeatedly asked and pressured him about retirement was sufficient evidence of pretext at the summary judgment stage).

[157] *See Swierkiewicz*, 534 U.S. at 511 ("This Court has never indicated that the requirements for establishing a prima facie case . . . also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss"); *Rouse v. Berry*, 680 F. Supp. 2d 233, 238 (D.D.C. 2010) ("a motion for summary judgment, and not a motion to dismiss, is the proper vehicle by which the defendants may raise their challenges to the sufficiency of" the plaintiff's establishment of one element of his prima face case); *Patrick v. Henderson,* 255 F.3d 914, 916 (8th Cir. 2001) (noting that whether conduct is an "adverse employment action is a fact issue that is rarely appropriate for Rule 12 resolution."); *Bryant v. Leavitt*, 475 F. Supp. 2d 15, 23 (D.D.C. 2007) (ruling, on summary judgment, that reasonable trier of fact could conclude plaintiff had suffered adverse employment action); *Hanson v. Nassau Cty. Dep't of Pub. Works*, 2007 WL 1526426, at *2 (E.D.N.Y. May 23, 2007) (finding defendant's argument that plaintiff did not suffer adverse employment action premature at the motion to dismiss stage).

[158] *Matrixx Initiatives*, 131 S. Ct., at 1322 n.12  ("to survive a motion to dismiss, [a plaintiff] need only allege 'enough facts to state a claim to relief that is plausible on its face.'") (quoting *Twombly*, 550 U.S. at 570); *see Gard v. U.S. Dep't of Educ.*, 691 F. Supp. 2d 93, 97 (D.D.C. 2010) ("when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.") (citing *Iqbal*, 129 S. Ct. at 1950).