## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **LAURA M. LAUGHLIN,** | |
| **Plaintiff,** | |
| **v.** | Civil Action No.  11-1869  (JDB) |
| **ERIC H. HOLDER, JR., Attorney General,** | |
| **Defendant.** | |

## MEMORANDUM OPINION

Plaintiff Laura M. Laughlin has sued defendant Eric H. Holder, Jr., in his capacity as Attorney General, for gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and age discrimination under the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.  Defendant has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds of failure to exhaust administrative remedies and failure to state a claim upon which relief may be granted.  For the following reasons, the Court will grant in part and deny in part defendant's motion.

## BACKGROUND

### I.    Factual Background

Laughlin is the Special Agent-in-Charge ("SAC") of the Seattle Division of the FBI, a position she has held since March 1, 2005.  Compl. [ECF 1] ¶¶ 1, 6.  She has worked for the FBI since 1985.  Id. ¶ 11.

In 1997, Laughlin filed an Equal Employment Opportunity ("EEO") complaint of gender

discrimination regarding the conduct of Jeffrey Lampinski, then-Inspector-in-Charge of the FBI's Campaign Financing Task Force.  Id. ¶¶ 13, 15.  Laughlin settled this EEO complaint in 2003. Id. ¶ 19.  In the summer of 2004, about six months after the settlement of her EEO complaint, Laughlin applied but was not selected for two promotions, to SAC of the Philadelphia Division and SAC of the Los Angeles Division.  Id. ¶¶ 43-44, 46-47.

In 2005, Laughlin was promoted to SAC of the Seattle Division.  See id. ¶ 6.  Shortly after she began serving in this position, Laughlin reviewed the Seattle Division's ongoing investigation of a major murder, designated Major Case 186.  Id. ¶ 20.  During her review of the investigation, Laughlin observed what she believed to be unlawful race- and sex-based discrimination by two white male Special Agents against a Supervisory Special Agent ("SSA") on Major Case 186.  Id. ¶¶ 21-23.  As a result, Laughlin removed the two Special Agents from the case and reassigned them to other duties.  Id. ¶ 24.  She reported the discrimination to FBI's senior leadership, but the agency did not follow up on her complaints.  Id. ¶ 28-29.

Laughlin's decision to reassign the two Special Agents was strongly opposed by a Special Assistant U.S. Attorney ("SAUSA") on the case.  Id. ¶ 25.[1]  In June 2005, the FBI reassigned the management of Major Case 186 from plaintiff, as SAC of the Seattle Division, to the male SAC of the Portland Division, despite the fact that the murder being investigated had happened in Seattle.  Id. ¶ 96.  In addition, the two Special Agents that Laughlin had reassigned were put back on the case.  Id. ¶ 97.

Laughlin alleges that her management of the Seattle Division was impeded by the

---

[1] Laughlin describes the SAUSA as a "close associate" of FBI Director Robert S. Mueller III and high-level Department of Justice ("DOJ") officials.  Compl. ¶ 25.

2

reassignment of Major Case 186 to the Portland Division and by the following personnel actions:
(1) the FBI delayed approval of Laughlin's request for a Border Liaison Officer for the Seattle
Division for more than four years, from June 2005 to July 2009; (2) the FBI "tabled" Laughlin's
job posting for the newly vacated position of supervisor of Major Case 186 in September 2009;
and (3) the FBI refused Laughlin's request for a replacement Media Representative when the
Seattle Division's Media Representative retired in December 2009.  Id. ¶¶ 88, 92-93, 100, 116,
121-23, 125, 129-32, 135.

In December 2006, an FBI inspection team investigated the Seattle Division for the
second time that year.[2]  Id. ¶ 101.  The performance report based on the inspection generally
praised Laughlin's job performance but listed two management deficiencies: first, that Laughlin
had not consulted the SAUSA before removing the two Special Agents from Major Case 186,
and second, that the Seattle Division lacked "a strong and effective executive level media
program."  Id. ¶¶ 105.

Laughlin did not receive a bonus in 2006, 2007, or 2008, even though her performance
ratings were equal to or better than the performance ratings of other SACs who received bonuses
and even though under Laughlin's leadership the Seattle Division received several FBI and DOJ
awards for excellence.  Id. ¶ 109.

Between 2007 and 2010, Laughlin applied but was not selected for ten promotions within

---

[2] The Seattle Division had been inspected in April 2006, but Laughlin had refused to sign
off on the inspection reports because, in her view, they inaccurately faulted the SSA on Major
Case 186 for management deficiencies and were based on unlawful discrimination.  Compl.
¶¶ 26-28.  After Laughlin reported the perceived inaccuracies to Director Mueller, he said that
the Seattle Division would be reinspected.  Id. ¶ 29.

the FBI: (1) SAC of the Newark Division (February 2007);[3] (2) Assistant Director ("AD") of the

Security Division of FBI headquarters (April 2007); (3) AD of the Training Division at Quantico,

Virginia (May 2007); (4) Deputy AD of the Criminal Investigative Division at FBI Headquarters

(October 2007); (5) SAC of the Philadelphia Division (December 2007); (6) SAC of the

Baltimore Division (February 2008); (7) SAC of the Office of International Operations (August

2008); (8) AD of Los Angeles Division (August 2009); (9) Assistant Director-in-Charge of the

New York Division (May 2010); and (10) SAC of the Philadelphia Division (July 2010).  Id.

¶¶ 50-87.

After Laughlin applied to be SAC of the Office of International Operations, a male was

named as Deputy Assistant Director of that office.  Id. ¶ 70.  Thereafter, the office was renamed

the International Operations Division, to be led by an AD rather than an SAC.  Id. ¶ 71.  The

duties of the "upgraded and renamed" position, AD of the International Operations Division,

were identical to the duties of the position for which Laughlin had applied.  Id. ¶ 73.  In October

2009, the male previously named as Deputy Assistant Director was named to the "upgraded and

renamed" position.  Id. ¶ 72-73.

Laughlin has felt pressure to retire from the FBI since January 2007.  See id. ¶ 110.

Deputy Director John Pistole first asked Laughlin in September 2007 if she would be retiring

soon, then told Laughlin in May 2008 that she would never be promoted within the FBI, and

finally, in August 2008, again asked Laughlin when she planned to retire and suggested that she

find a job in the private sector.  Id. ¶¶ 111, 113-14.

---

[3] Each date noted in parentheses represents the date on which Laughlin applied for a given position.

II.   **Procedural Background**

On September 25, 2008, Laughlin contacted an EEO counselor about her claims of

discrimination.  Id. ¶ 138.  She filed a formal EEO complaint against the FBI on December 16,

2008.  Id.  Based on that complaint, the following claim was accepted for investigation:

> whether the Agency discriminated against Complainant on the bases of her sex
> (female), age (dob 9/14/57), and reprisal, when management continuously
> harassed her, treated her disparately, denied her promotion opportunities from
> June 2004 to the present; and when, on August 11, 2008, the Deputy Director
> suggested that Complainant retire and stated that she should find another job
> outside of the FBI.

Order (Apr. 25, 2011), Def.'s Mot. to Dismiss [ECF 11] ("Def.'s MTD"), Ex. A ("AJ Order") 1.

After the investigation, Laughlin requested a hearing before an administrative judge.  Compl.

¶¶ 139-40.  On December 18, 2009, an administrative judge notified Laughlin that her complaint

had been assigned to him.  Id. ¶ 143.  On February 1, 2010, Laughlin moved to amend her

complaint to add five claims concerning: (1) her 2009 non-promotion to AD of the Los Angeles

Division; (2) her non-promotion to SAC of the Office of International Operations, a position

effectively filled by a male in October 2009; (3) the 2009 tabling of Laughlin's job posting for

supervisor of Major Case 186; (4) the 2005-2009 delay in approving her request for a Border

Liaison Officer; and (5) the 2009 refusal to replace the Seattle Division's Media Representative.[4]

Id. ¶ 146.  On November 3, 2010, Laughlin filed a second motion to amend her complaint, to add

claims concerning (1) her 2010 non-promotion to Assistant Director-in-Charge of the New York

Division and (2) her 2010 non-promotion to SAC of the Philadelphia Division.  Id. ¶ 148.

---

[4] On January 6, 2010, Laughlin had moved to postpone discovery, stating that she
intended to file a motion to amend but was awaiting its approval by the FBI's Civil Discovery
Review Unit.  Compl. ¶ 145.

The administrative judge accepted for amendment claims (4) and (5) of Laughlin's first motion to amend, but rejected the remaining claims as untimely, reasoning that claims (1), (2), and (3) of Laughlin's first motion to amend and both claims in her second motion had occurred more than 45 days before her respective amendments.  See AJ Order 4.  In addition, although Laughlin had not raised denial of bonuses to her EEO counselor, the administrative judge interpreted her claims regarding bonuses as an amendment to her complaint and found that they were like or related to the accepted issues.  Id. at 2.  He found that Laughlin's claims of being denied bonuses in 2006 and 2007 were untimely, but accepted for amendment the denial of a bonus in December 2008.  Id. at 2-3.  The administrative judge ordered a supplemental investigation of the new claims accepted.  Id. at 5.

After the dismissal of her administrative complaint in July 2011, Laughlin filed suit in this Court.  See Compl. ¶ 151.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam).  Although "detailed factual allegations" are not necessary, to provide the "grounds" of "entitle[ment] to relief," plaintiffs must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Twombly, 550 U.S. at 555-56 (internal quotation marks omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937,

1949 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. D.C. Office of the Mayor,

567 F.3d 672, 681 (D.C. Cir. 2009).

"[I]n passing on a motion to dismiss, . . . the allegations of the complaint should be

construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also

Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164

(1993).  Therefore, the factual allegations must be presumed true, and plaintiffs must be given

every favorable inference that may be drawn from the allegations of fact.  See Scheuer, 416 U.S.

at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  However, the

Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences

that are unsupported by the facts set out in the complaint.  Trudeau v. Fed. Trade Comm'n, 456

F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In ruling on a motion to dismiss, a court may consider "only the facts alleged in the

complaint, any documents either attached to or incorporated in the complaint and matters of

which [it] may take judicial notice." See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d

621, 624-25 (D.C. Cir. 1997).  In this case, the Court has considered Laughlin's formal

administrative complaint and the administrative judge's order on her motions to amend.  These

documents, though not attached to Laughlin's complaint, are referred to in the complaint, see

Compl. ¶¶ 138, 149, are integral to Laughlin's exhaustion of administrative remedies, and are

public records subject to judicial notice; hence, they may be considered without converting

defendant's motion into one for summary judgment.  See id.; see also Kaempe v. Myers, 367 F.3d

958, 965 (D.C. Cir. 2004); Bowe-Connor v. Shinseki, 845 F. Supp. 2d 77, 89 n.6 (D.D.C. 2012);

7

Green v. Small, No. 05-1055, 2006 WL 148740, at *6 n.4 (D.D.C. Jan. 19, 2006).[5]

## DISCUSSION

### I.    Failure to Exhaust Administrative Remedies

A federal government employee must exhaust his or her administrative remedies before

bringing Title VII claims in federal court.  See Hamilton v. Geithner, 666 F.3d 1344, 1349 (D.C.

Cir. 2012).  Under 29 C.F.R. § 1614.105(a)(1), the employee must first contact an EEO

counselor "to try to informally resolve the matter," and must do so "within 45 days of the date of

the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the

effective date of the action."  If the matter is not resolved, then the employee may file a formal

complaint with the agency.  Id. §§ 1614.105(d), 1614.106(a).  The employee may amend the

complaint "at any time prior to the conclusion of the investigation" or, if he or she has requested

a hearing, by motion to the administrative judge, "to include issues or claims like or related to

those raised in the complaint."  Id. § 1614.106(d).

If final action has not been taken after 180 days from the filing of the complaint, the

employee may file a civil action.  See id. § 1614.407(b).  A Title VII lawsuit is "limited in scope

to claims that are like or reasonably related to the allegations of the [administrative complaint]."

Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation marks omitted).  At

a minimum, the claims "must arise from the administrative investigation that can reasonably be

expected to follow the charge of discrimination."  Id. (internal quotation marks omitted).

For purposes of exhaustion, there are two types of Title VII claims: (1) claims of discrete

---

[5] Laughlin does not argue that the EEO documents should not be considered here, or that
defendant's motion should be converted into one for summary judgment.

retaliatory or discriminatory acts and (2) hostile work environment claims.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110, 115 (2002).  A Title VII plaintiff must timely exhaust administrative remedies for each discrete act alleged.  See id. at 110.  If time-barred, discrete acts will not be actionable, "even when they are related to acts alleged in timely filed charges."  Id. at 113.  Hostile work environment claims, on the other hand, are "different in kind" from discrete act claims.  Id. at 115.  They are "composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'"  Id. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)).  Hence, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  Id.  And that act need not be the last act; subsequent events "may still be part of the one hostile work environment claim."  Id.

Defendant argues that Laughlin failed to timely exhaust her discrete act and hostile work environment claims under Title VII.  "Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it."  Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997).

A.     Discrete Acts

In Counts I and II of her complaint, Laughlin alleges gender discrimination and retaliation based on the following discrete acts that occurred between 2006 and 2010: (1) ten non-promotions between 2007 and 2010;[6] (2) denial of a bonus in 2008; (3) two investigations of the Seattle Division in 2006; and (4) the reassignment of Major Case 186 to the SAC of the Portland

---

[6] Laughlin claims retaliation based on all ten non-promotions, but, because females were selected for three of the ten positions, she claims gender discrimination based on only seven non-promotions.  See Compl. ¶¶ 155-56, 157-69.

Division in 2006.  See Compl. ¶¶ 152-75.[8]  To determine which of these claims Laughlin timely

exhausted, the Court will examine first the claims in Laughlin's formal administrative complaint

and then the claims in her motions to amend that complaint.

   1.  Laughlin's original claims

  In Laughlin's formal administrative complaint, she claimed discrimination based on sex,

age, and reprisal.  See Compl. of Discrimination (Dec. 16, 2008), Def.'s MTD, Ex. D ("Admin.

Compl.").  The agency described the claims initially accepted for investigation as follows:

> whether the Agency discriminated against Complainant on the bases of her sex
> (female), age (dob 9/14/57), and reprisal, when management continuously
> harassed her, treated her disparately, denied her promotion opportunities from
> June 2004 to the present; and when, on August 11, 2008, the Deputy Director
> suggested that Complainant retire and stated that she should find another job
> outside of the FBI.

See AJ Order 1.  In support of these claims, Laughlin had alleged a series of discriminatory and

retaliatory acts dating back to her 2004 non-promotions that included, among others, the 2007

and 2008 non-promotions, the 2008 denial of a bonus, the 2006 investigations of the Seattle

Division, and the 2006 reassignment of Major Case 186.  See Admin. Compl. ¶¶ 35-65.

  Untimely Claims  Discrete claims based on most of these acts, however, were not timely

exhausted.  Because Laughlin did not seek EEO counseling until September 25, 2008, any acts

that occurred more than 45 days before that date – that is, before August 11, 2008 – were time-

---

  [8] Although Laughlin alleges other actions taken against her elsewhere in her complaint,
the Court construes the complaint as asserting only the discrete acts listed in Counts I and II as
the bases for the claims in those counts.  Other acts that are not listed there include: the 2004
non-promotions, the 2006 and 2007 denials of bonuses, the 2009 tabling of the job posting for
supervisor of Major Case 186, the 2005-2009 delay in approving Laughlin's request for a Border
Liaison Officer, and the 2009 refusal to replace the Seattle Division's Media Representative.  See
infra at p.15 and note 10.

barred.  See Morgan, 536 U.S. at 113; 29 C.F.R. § 1614.105(a)(1).  The five 2007 non-

promotions, the 2008 non-promotion to SAC of the Baltimore Division, and the 2006 actions in

Seattle all occurred before August 11, 2008; hence, they are not independently actionable.  See

Morgan, 536 U.S. at 113; Compl. ¶¶ 50-68, 152-75.[9]  Laughlin appears to concede as much in

her opposition to defendant's motion to dismiss.  Of the claims in her original administrative

complaint, she argues that she timely exhausted administrative remedies only as to her non-

promotion to SAC of the Office of International Operations and the denial of a bonus in 2008.

See Pl.'s Opp'n to Def.'s MTD [ECF 13] ("Opp'n") 13-15.  Defendant argues that these claims,

too, were not timely exhausted.

   SAC-OIO Non-Promotion  As alleged in her administrative complaint, Laughlin applied

for the position of SAC of the Office of International Operations ("SAC-OIO") on August 4,

2008.  See Admin. Compl. ¶ 65.  On August 5, 2008, three males received temporary duty

assignments to that position.  See id.  As of the date Laughlin filed her administrative complaint,

she had not been contacted about a temporary duty assignment to the position, and the position

had not been permanently filled.  See id.  Although Laughlin applied for the SAC-OIO position

on August 4, 2008, one week outside the 45-day window, her claim of non-promotion may

nevertheless have been timely.  First, to the extent that Laughlin was complaining about not

receiving a temporary duty assignment, it is not clear that she learned of the three males'

assignments on August 5.  See Admin. Compl. ¶ 65 (stating that at least one of the males given a

temporary duty assignment had not applied for it and that "[n]o one has contacted me to ask if I

---

[9] For the same reason, the 2004 non-promotions and the 2006 and 2007 denials of bonuses, even if construed as being asserted in the complaint, see supra note 8, would be time-barred.

would be interested in a [temporary duty] assignment to OIO").  And even if she did, it is not

clear that a decision was made before August 11 <u>not</u> to give her a temporary duty assignment (or

that Laughlin learned of any such decision before that date).  Second, because the SAC-OIO

position had not been filled on the date she filed her complaint, Laughlin's claim of non-

promotion to the permanent position, though it may have been premature, was not too late.

Hence, on this record, defendant has not shown that Laughlin's SAC-OIO claim was not timely

exhausted.

     <u>Denial of 2008 Bonus</u>  In her administrative complaint, Laughlin alleged that she was not

awarded a bonus in 2008 because of "gender discrimination and retaliatory animus for [her]

earlier EEO charge and for [her] defense of [the SSA's] right to be free from race [redacted]

discrimination."  Admin. Compl. ¶ 74.  Laughlin did not raise the issue of bonuses in EEO

counseling, but the administrative judge accepted her 2008 bonus claim anyway because he

interpreted it as an amendment to her complaint and found that it was like or related to the claims

in her original complaint.  <u>See</u> AJ Order 2-3.  Defendant does not challenge the administrative

judge's treatment of the bonus claim as an amendment.  <u>See</u> Def.'s MTD 14-15; Def.'s Reply in

Supp. of MTD [ECF 17] ("Reply") 3.  Given that EEO regulations permit amendments to a

complaint "at any time prior to the conclusion of the investigation," and in this case the

investigation had not yet begun at the time Laughlin sought to "amend" the bonus claim, this

treatment appears appropriate.  <u>See</u> 29 C.F.R. § 1614.106(d); <u>see also</u> <u>Weber v. Battista</u>, 494

F.3d 179, 183 (D.C. Cir. 2007); <u>Kalinoski v. Gutierrez</u>, 435 F. Supp. 2d 55, 77 (D.D.C. 2006)

("Nor does the Court interpret the regulations as demanding that a complaining party, rather than

(or prior to) utilizing the amendment procedure of section 1614.106, initiate a separate informal

proceeding under section 1614.105 for every subsequent matter that is 'like or related to' an ongoing investigation."); 29 C.F.R. § 1614.107(a)(2) (providing for dismissal of complaint "that raises a matter that has not been brought to the attention of a Counselor and is not like or related to a matter that has been brought to the attention of a Counselor" (emphasis added)).  However, only "issues or claims like or related to those raised in the complaint" may be added by amendment, and defendant argues that the administrative judge erred in accepting Laughlin's 2008 bonus claim because it was not like or related to the other claims that had been accepted. See Def.'s MTD 15.

    "[A] new claim is 'like or related to' a pending claim if it 'could have reasonably been expected to grow out of the original complaint during the investigation.'"  See Weber, 494 F.3d at 183 (quoting Core v. Brownlee, No. 01A34550, 2004 WL 189570, at *1 (E.E.O.C. Jan. 23, 2004)).  Citing this Court's decision in Bell v. Donley, 724 F. Supp. 2d 1, 12 (D.D.C. 2010), defendant contends the denial of a bonus in 2008 is a "separate, discrete act" not "like or related to" the other discrete acts in her complaint.  Def.'s MTD 15.  In Bell, this Court concluded that two amended claims (based on demotion and transfer to a cubicle and on denial of overtime work) were not "like or related to" the two original claims (based on non-promotion and on denial of a performance award) because the four incidents underlying the claims "share[d] little factual similarity," save the fact that "they [were] all allegedly violations of Title VII."  See Bell, 724 F. Supp. 2d at 12.  It is certainly true that a claim based on a denied bonus will not always be "like or related to" claims based on other discrete acts, here primarily non-promotions.  But for several reasons particular to this case, the Court concludes that Laughlin's 2008 bonus claim was sufficiently "like or related to" her other claims to go forward as an amended claim.

First, viewed alongside the other claims in Laughlin's administrative complaint, her claim of being denied a bonus plainly "relate[s] to" her other claims.  Laughlin's administrative complaint presents a narrative of successive actions taken against her since she became SAC of the Seattle Division, and her bonus claim fits naturally into that narrative.  It appears under a heading stating that Laughlin "continued to receive discriminatory and retaliatory treatment" as SAC of the Seattle Division, which follows the allegations about her opposition to discrimination against the SSA and the ensuing events, including the reassignment of Major Case 186, the reinspection of the Seattle Division, the performance report citing Laughlin's management deficiencies, several non-promotions, and Laughlin's being told that she would never be promoted.  See Admin. Compl. 20; id. at 5-23.  Laughlin also alleged knowledge of gender discrimination against other female SACs "in evaluations, bonus determinations, and inspections."  See id. ¶ 82.  The denial of a bonus is a performance-based action that "could have reasonably been expected to grow out of" an investigation of the other performance-based actions alleged, all of which, like the bonus denial, Laughlin attributed to both gender discrimination and retaliation.  See Weber, 494 F.3d at 184; Admin. Compl. ¶ 79.  Hence, unlike in Bell, there was factual overlap between the new and original claims.  See Bell, 724 F. Supp. 2d at 12.

Moreover, Laughlin raised the issue of her 2008 bonus denial early in the administrative process, and just one week after she found out about it, thus giving the agency ample notice and a fair opportunity to resolve her claim.  See Loe v. Heckler, 768 F.2d 409, 418 (D.C. Cir. 1985); Admin. Compl. ¶ 79; cf. Bell, 724 F. Supp. 2d at 12 ("The retaliation claims were added at the eleventh hour of the investigation on Bell's earlier unrelated claims, and hence went virtually nowhere in the EEO process.").  In fact, because Laughlin raised her bonus claim in her formal

administrative complaint, it "could have reasonably been expected" not only to grow out of, but to be included in, the agency's investigation of that complaint.  See Weber, 494 F.3d at 183. Finally, although the Court is not bound by an administrative judge's ruling, it is noteworthy that the administrative judge here accepted Laughlin's 2008 bonus claim for amendment after specifically finding that it was "like or related to the accepted issues."  See AJ Order 2-3.  Such was not the case in Bell.  See Bell, 724 F. Supp. 2d at 12 ("[T]he Administrative Judge's one-page order contains no determination that the new claims were 'like or related to' the original claims under 29 C.F.R. § 1614.106(d), nor does it refer to the regulation.").  Accordingly, for all these reasons, Laughlin's 2008 bonus claim will not be dismissed for failure to exhaust.

2.      Other claims sought to be added

Next, the Court turns to the claims in Laughlin's two motions to amend her administrative complaint.  Because, as discussed above, the Court construes Laughlin's complaint as alleging discrete act claims in Counts I and II based only on the acts listed therein, it need not decide whether the administrative judge should have accepted for amendment the claims regarding the tabled supervisory position, the Border Liaison Officer, and the Media Representative.[10]  That

---

[10] Despite making no mention of defendant's alleged interference with her efforts to fill these three positions in Counts I and II of her complaint, Laughlin asserts in her opposition that her claims based on that interference were "like or related to" the claims in her original complaint.  See Opp'n 21.  The Court will briefly address that argument.  In general, claims about staffing one's office are nothing like claims about promotions, bonuses, performance evaluations, and the like.  And no particular facts made Laughlin's claims about her trouble filling the three positions reasonably likely to grow out of the administrative investigation here.  See Weber, 494 F.3d at 183.  As with the amended issues in Bell, these three claims "share little factual similarity" with those in the original complaint, save the fact that "they are all allegedly violations of Title VII."  See Bell, 724 F. Supp. 2d at 12; see also Opp'n 21 (arguing only that three claims "reflect actions taken by many of the same individuals out of discriminatory and retaliatory animus").  To the extent that Laughlin is bringing discrete act claims related to filling these three positions, then, the claims were not timely exhausted and will be dismissed.

15

leaves Laughlin's claims of discriminatory and retaliatory non-promotion to: (1) AD of the Los Angeles Division in September 2009; (2) AD of the International Operations Division (the re-titled SAC-OIO position) in October 2009; (3) Assistant Director-in-Charge of the New York Division in August 2010; and (4) SAC of the Philadelphia Division in September 2010.  The administrative judge denied Laughlin leave to amend these claims, concluding that they were untimely because each of the four non-promotions had occurred more than 45 days before Laughlin raised them in her two motions to amend.  See AJ Order 3-4.  The administrative judge did not determine whether any of the non-promotion claims were like or related to Laughlin's original claims.  Because 29 C.F.R. § 1614.106(d) explicitly requires that amended claims be "like or related to" claims raised in the complaint, the Court will address the like or related question first, and then, as to any like or related claims, the 45-day question.

AD-IOD Non-Promotion  In the Court's view, Laughlin's claim of non-promotion to AD of the International Operations Division ("AD-IOD") is unquestionably like or related to her claim of non-promotion to SAC-OIO.  Laughlin alleges in her complaint that the position of SAC of the Office of International Operations, for which she applied in August 2008, was subsequently "upgraded and renamed" AD of the International Operations Division, although the duties of the two positions were identical.  Compl. ¶¶ 69, 71, 73.  Laughlin's later claim, then, was that a male was selected over her for essentially the same position identified in, and not yet filled at the time of, her original complaint.  Accepting Laughlin's allegations as true and giving her all favorable inferences, an investigation of her original SAC-OIO non-selection claim would likely have revealed that the position was upgraded and renamed and that a male was selected for it.  Hence, the new claim is "like or related to" the original claim.  See Weber, 494 F.3d at 184

16

(holding that claim of discriminatory nonselection as Deputy Executive Secretary was "like or related to" claim of nonselection as Acting Deputy Executive Secretary).

Other 2009-2010 Non-Promotions   The other three non-promotion claims raised in Laughlin's motions to amend present a closer question.   Laughlin argues that these claims were like or related to the non-promotion claims in her original complaint because they "represent the same course of conduct and implicate many of the same decisionmakers."   Opp'n 21.   Defendant counters that Laughlin has not cited any cases indicating that "a non-selection for one position is like or related to the non-selection for another position that has a different title, requires different skills and is in a different location than the first non-selection."   Reply 9.   Defendant has a point, as it cannot be that any allegedly discriminatory or retaliatory non-promotion is like or related to a previous non-promotion.   And requiring only that later non-selections "represent the same course of conduct and implicate many of the same decisionmakers" would not seem to provide a workable limit.   If so, then any senior-level employee who files an administrative complaint concerning a non-promotion might apply for other senior-level positions and, if she is rejected, no matter how disparate the job descriptions or qualifications of other applicants or geographic locations, then tack new non-promotion claims onto her complaint indefinitely.

On the other hand, Laughlin stated in her administrative complaint that she had "sought, on numerous occasions, opportunities to advance [her] career while moving closer to [her or her] husband's families," but that she believed each of those opportunities had been denied to her "to discriminate and retaliate against [her]" for her 1997 EEO complaint and for her defense of the SSA in Seattle.   Admin. Compl. ¶ 58.   An investigation into these non-promotions may eventually have led to the three subsequent non-promotions to similar positions of leadership in

17

various FBI offices located outside Seattle.  The Court is skeptical, given the different titles of, locations of, and persons selected for the three positions (it bears noting that a female was selected for one of the three).  See Compl. ¶¶ 76-87.  But it is at least conceivable that additional claims of being denied career advancement opportunities "could have reasonably been expected to grow out of the original complaint during the investigation."  See Weber, 494 F.3d at 183 (internal quotation marks omitted).

A problem here, however, is that Laughlin's subsequent non-promotion claims, the first of which arose in September 2009, could not have "arisen from the administrative investigation" that followed her original complaint because that investigation ended on July 6, 2009.  See Payne v. Salazar, 619 F.3d 56, 65 (D.C. Cir. 2010) ("But as Payne conceded at oral argument, her claim concerning the retaliatory conduct that took place in January 2008 could not possibly have 'arisen from the administrative investigation' that followed the EEO complaints she filed with Interior in 2004.  This is necessarily so because the administrative investigation of those complaints ended in September 2007, well before January 2008." (citation omitted)); Compl. ¶¶ 78, 139.  Although the administrative judge ordered a supplemental investigation of the new claims accepted for amendment, the new non-promotion claims were not among the claims accepted.  See AJ Order 4-5.  His decision (although based on a different rationale) not to permit amendment to add the three new non-promotion claims is supported by the EEO regulation governing amendments, which distinguishes between like or related claims raised before the conclusion of the administrative investigation and those raised after the investigation is complete and a hearing has been requested.  See 29 C.F.R. § 1614.106(d) (providing for amendment of like or related claims "at any time" before investigation complete but, once hearing has been requested, only if

18

administrative judge grants motion to amend).

The 2009 and 2010 non-promotion claims also differ from the 2008 bonus claim, even though, in the abstract, a non-promotion may be thought to be similar to a denied bonus.  Both are personnel actions, and in this case Laughlin alleges that the FBI repeatedly denied her both promotions and bonuses as part of one discriminatory and retaliatory hostile work environment. See infra Parts I.B and II.A.  But just as time-barred discrete acts are not actionable "even when they are related to acts alleged in timely filed charges," there also must be some limit on subsequent acts that may be added by amendment even when they relate in some way to claims raised in the administrative complaint.  See Morgan, 536 U.S. at 113.  Here, the 2009 and 2010 non-promotion claims did not even arise, and clearly were not raised, until after the investigation of Laughlin's administrative complaint had ended, whereas the 2008 bonus claim was raised in that complaint.  Moreover, the 2009 and 2010 non-promotions involved positions in Los Angeles, New York, and Philadelphia, places far removed from a Seattle-based investigation, whereas the 2008 bonus denial happened (at least from Laughlin's perspective) in Seattle, like most of the other acts alleged in her administrative complaint.

Because Laughlin's three new non-promotion claims involved positions nowhere mentioned in her original complaint, that differed from the positions in her complaint in material ways, and for which she applied only after the conclusion of the initial investigation, the Court concludes that they were not sufficiently "like or related to" her original claims as to have been proper for amendment.  Hence, the claims were not timely exhausted and will be dismissed.

Applicability of the 45-Day Rule  The administrative judge denied Laughlin leave to amend her AD-IOD non-promotion claim because she moved to amend it more than 45 days

after the FBI selected a man for the position.  See AJ Order 3-4.  Laughlin contends that this was

incorrect because the 45-day time limit for initiating EEO counseling does not set the time for

filing amendments to a complaint.  See Opp'n 17.  The Court agrees.  The regulations state just

one requirement for claims or issues sought to be added by amendment: that they be like or

related to those raised in the initial complaint.  See 29 C.F.R. § 1614.106(d).  Section

1614.106(d) contains no time limit, and the Court sees no reason to read one into it.  See

Kalinoski, 435 F. Supp. 2d at 76; see also Ramirez v. Sec'y, U.S. Dep't of Transp., 686 F.3d

1239, 1246-47 & n.4 (11th Cir. 2012).  Compare 29 C.F.R. § 1614.105(a) (specifying 45-day

time limit), with id. § 1614.106(d) (no time limit specified).  The Court also rejects defendant's

assertion that Laughlin simply "waited too long" to file her motions to amend.  See Reply 6-7.

Laughlin filed her first motion to amend just over two months after the assignment of an

administrative judge to her complaint, and after having to gain approval from the FBI's Civil

Discovery Review Unit.  See Compl. ¶¶ 143-46.  And as discussed above, Laughlin's AD-IOD

claim is precisely the type of "like or related" claim that is proper for amendment, because it

"add[ed] to" and "could have reasonably been expected to grow out of" the SAC-OIO claim in

her original complaint.  See Core, 2004 WL 189570, at *1, cited in Weber, 494 F.3d at 183-84.

Hence, "pragmatic considerations of fairness to the defendant" do not support its dismissal.  See

Reply 8.

      In summary, defendant has not met its burden of showing that Laughlin failed to exhaust

her claims of discriminatory and retaliatory (1) non-promotion to SAC of the Office of

International Operations (or, as retitled, AD of the International Operations Division), and (2)

denial of a bonus in 2008.  See Bowden, 106 F.3d at 437.  Laughlin's other discrete act claims

will be dismissed for failure to timely exhaust administrative remedies.

      B.      Hostile Work Environment

In Count III of her complaint, Laughlin claims that defendant has subjected her to a hostile work environment, on account of her gender and her protected activity.  See Compl. ¶ 177.  She alleges that the following series of acts constituted a hostile work environment:

> [T]he FBI repeatedly failed to promote Plaintiff to positions for which she was qualified, interfered with her efforts to hire a Border Liaison Officer, removed Major Case 186 from her supervision, manipulated her performance evaluations, denied her bonuses to which she was entitled, repeatedly pressured her to retire, interfered with her ability to fill a supervisory position related to the investigation of Major Case 186, and interfered with her efforts to hire a Media Representative.

Id.

Defendant asserts, in conclusory fashion, that Laughlin's hostile work environment claim should be dismissed because it is untimely.  See Def.'s MTD 17-18.  Its sole argument in support seems to be that Laughlin cannot use a hostile work environment theory to "save" her untimely discrete acts claims.  See Reply 10, 12.  True enough.  But the D.C. Circuit made clear in Baird v. Gotbaum, 662 F.3d 1246, 1252 (D.C. Cir. 2011), that a court may not dismiss a hostile work environment claim "merely because it contains discrete acts that the plaintiff claims (correctly or incorrectly) are actionable on their own."  Laughlin's claim will not be dismissed for that reason here.  Any argument that Laughlin has tried to "combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard," see id., which defendant appears to make in its reply, see Reply 12-13, goes to whether Laughlin has stated a claim rather than to whether she has timely exhausted administrative remedies.

A hostile work environment claim may be timely as long as "an act contributing to the

claim occur[ed] within the filing period," even if other acts alleged would not be actionable on their own because time-barred.  See Morgan, 536 U.S. at 117; Singletary v. District of Columbia, 351 F.3d 519, 527 (D.C. Cir. 2003).  Laughlin's claim here includes the FBI's "repeated[] pressure[]" to retire, the last instance of which occurred on August 11, 2008, when Deputy Director Pistole again asked Laughlin about retirement and suggested that she find a job in the private sector.  See Compl. ¶¶ 114, 177.  Because this act occurred within 45 days of September 25, 2008, the date Laughlin first contacted an EEO counselor, Laughlin may be able to recover for any acts that, along with the asserted pressure to retire on August 8, 2011, "collectively constitute one unlawful employment practice."  See Morgan, 536 U.S. at 117 (internal quotation marks omitted).  Hence, the Court will not dismiss Laughlin's hostile work environment claim as untimely.[11]

## II.    **Failure to State a Claim**

Defendant also argues that many of Laughlin's claims should be dismissed for failure to state a claim.  See Fed. R. Civ. P. 12(b)(6).  The Court need only consider this argument as to claims that will not be dismissed for failure to exhaust administrative remedies.  This leaves Laughlin's Title VII claims of gender discrimination and retaliation based on non-promotion to the SAC-OIO or AD-IOD positions, denial of a bonus in 2008, and a hostile work environment, and her ADEA claim.  Defendant does not argue that the non-promotion or bonus claims do not

---

[11] Defendant has not argued, much less shown, that Laughlin failed to exhaust her administrative remedies because she did not allege a hostile work environment in her administrative complaint.  In any case, her hostile work environment claim appears "like or reasonably related to" her EEO allegations, both because the agency accepted Laughlin's claim that "management continuously harassed her," and because her administrative complaint and motions to amend contained "factual allegations supporting such a claim."  See Park, 71 F.3d at 907-08 (internal quotation marks omitted); AJ Order 1.

state a claim, so they will go forward at this time;[11] the hostile work environment and age

discrimination claims will be analyzed under Rule 12(b)(6).

A.      Hostile Work Environment

A hostile work environment exists, for purposes of Title VII, "[w]hen the workplace is

permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or

pervasive to alter the conditions of the victim's employment and create an abusive working

environment." See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks

and citation omitted); see also Baird, 662 F.3d at 1250.  Although Morgan permits consideration

of time-barred acts as part of a hostile work environment claim, it is not "an open sesame to

recovery for time-barred violations." Baird, 662 F.3d at 1250.  "Both incidents barred by the

statute of limitations and ones not barred can qualify as 'part of the same actionable hostile

environment claim' only if they are adequately linked into a coherent hostile environment claim –

if, for example, they 'involve the same type of employment actions, occur relatively frequently,

and are perpetrated by the same managers.'" Baird, 662 F.3d at 1251 (quoting Morgan, 536 U.S.

_____

[11] Laughlin is claiming that the FBI did not promote her and denied her a bonus both because of her gender and in retaliation for her protected activity. See Compl. ¶¶ 156, 166.  With respect to her retaliation claims, the Court assumes that her opposition to discrimination in Seattle constitutes protected activity under Title VII.  But to the extent that her retaliation claims are based on her 1997 EEO complaint, the Court thinks it unlikely that she will be able to show the requisite causal link between that complaint and the 2008 and 2009 acts she complains of here.  Although temporal proximity is not an element of a retaliation claim, the substantial gap in time between Laughlin's earlier EEO activity and the allegedly retaliatory acts, not to mention her intervening promotion to SAC of the Seattle Division, will make it difficult to show a causal link between the two.  Cf. Hamilton, 666 F.3d at 1357-58 (discussing significance of temporal proximity in establishing prima facie case); Winston v. Clough, 712 F. Supp. 2d 1, 11 (D.D.C. 2010).  And of course, Laughlin cannot claim retaliation based on her 2009 participation in a group addressing gender inequities among the FBI's senior executives for acts that occurred before her participation in that group.  See Compl. ¶¶ 163-66.

at 120-21) (alterations omitted).

Applying these principles here, the Court must determine, first, whether the acts alleged

to constitute a hostile work environment are "adequately connected to each other (i.e., [that] 'all

acts which constitute the claim are part of the same unlawful employment practice' [under]

Morgan, 510 U.S. at 21)," and second, whether they "collectively meet the independent

requirements of that claim (i.e., [are] 'sufficiently severe or pervasive' [under] Harris, 510 U.S. at

122)." See id. at 1252.

        1.      Adequately connected

There is no precise formula for determining whether a series of separate acts are "'part of

the same unlawful employment practice'" or are instead "an array of unrelated discriminatory or

retaliatory acts." See Baird, 662 F.3d at 1251-52 (quoting Morgan, 536 U.S. at 122) (collecting

general formulations of inquiry taking into account, for example, type, frequency, relatedness,

and severity of separate acts); see also Mason v. Geithner, 811 F. Supp. 2d 128, 178 (D.D.C.

2011) ("That does not mean that it will always be necessary for the component-acts comprising a

hostile work environment to be identical or to take the same form; however, there must be a

'common thread' among them.").  Defendant describes the acts forming Laughlin's hostile work

environment claim as "a seemingly unrelated series of complaints about her work environment."

Def.'s MTD 19 (citing Baird, 662 F.3d at 1252; Mason, 811 F. Supp. 2d at 178-79).  Laughlin

puts it differently, stating that the acts alleged resulted from "decisions made by a small group of

FBI executives" and are sufficiently related to one another to "cohere" into a hostile work

environment.  See Opp'n 26.  According to Laughlin:

After twenty-seven years in the FBI, Plaintiff has worked her way up to a position

with a high level of responsibility, only to find that she no longer has the
opportunity for advancement that her peers have (hence the multiple denials of
promotion), she no longer has control of all Bureau operations in her jurisdiction
(hence the transfer of Major Case 186), she does not have the same opportunity to
staff her office that her peers have (hence the long delays in filling the Border
Liaison Officer, Media Representative, and Supervisory Special Agent positions),
and – as a combined effect of all these matters – she is not respected as a leader by
her subordinates and management chain in the way that SACs normally are.

See id. at 24-25; see also id. at 26-27 (linking "repeated pressure to retire" to other acts

comprising claim). Laughlin's contention appears to be that her timely allegation that the FBI put

pressure on her to retire in August 2008 plausibly relates to her allegations regarding time-barred

and subsequent acts as follows: in pressuring Laughlin to retire the FBI told her that she would

not be promoted within the agency; she was not, in fact, promoted to a number of positions for

which she applied; the agency impeded her job performance by denying her needed personnel

and undercut her leadership by removing a case from her jurisdiction; and even though Laughlin

did her job well in spite of all this, she received poor performance evaluations and no bonuses.

See Opp'n 16, 24-27; see also Morgan, 536 U.S. at 117.

Viewed in the light most favorable to Laughlin, the acts in Count III of her complaint

could "collectively constitute one unlawful employment practice" since Laughlin began as SAC

of the Seattle Division, perpetrated by a core group of senior decisionmakers, and designed to

make her job less desirable and more difficult. See Morgan, 536 U.S. at 117 (internal quotation

marks omitted). Compare, e.g., Mason, 811 F. Supp. 2d at 179 (concluding that acts were not

part of same hostile work environment where plaintiff made "no attempt – none – to crystalize

for the Court how these disparate acts could be seen by a trier of fact as sufficiently related to

coalesce into a single hostile work environment"). It is perhaps doubtful that all of the acts

alleged were in fact connected (and motivated by discrimination or retaliation, or both), but Laughlin is correct that the relationships, if any, among these acts and the reasons behind them are matters best left for discovery.  See Opp'n 25, 29.  Because Laughlin has put forth a plausible theory tying the acts of her hostile work environment claim together, the claim will not be dismissed for lack of an adequate connection under Morgan.  See Morgan, 536 U.S. at 121-22; Baird, 662 F.3d at 1251-52.

2.      Sufficiently severe or pervasive

To determine whether an employer's actions were "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," see Harris, 510 U.S. at 21, a court should consider "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," see Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (internal quotation marks omitted); see also Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008). The complained-of conduct must be "extreme" to constitute "a change in the terms and conditions of employment."  Faragher, 524 U.S. at 788.

The Court notes, as an initial matter, that Laughlin is not alleging a typical hostile work environment claim.  She argues that defendant's actions unreasonably interfered with her work performance, see id., but is not really complaining about her actual physical workplace, see, e.g., Harris, 510 U.S. at 21 ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." (emphasis added)); Brantley v. Kempthorne,

No. 06-1137, 2008 WL 2073913, at *8 (D.D.C. May 13, 2008) ("A hostile work environment under Title VII must be based on 'one unlawful employment practice' of pervasive, insulting, discriminatory conduct that makes the plaintiff's day-to-day work environment severely 'abusive.'" (quoting Morgan, 536 U.S. at 118; Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998))).  Laughlin's complaint contains no allegations of discriminatory or retaliatory "intimidation, ridicule, [or] insult" in her day-to-day work environment.  See Harris, 510 U.S. at 121; Brantley, 2008 WL 2073913, at *8.  Indeed, as the Special-Agent-in-Charge of the Seattle Division, Laughlin sits at the top of her office.  Her hostile work environment claim is not based on the conduct of her co-workers in Seattle, but on that of her superiors and other FBI officials located elsewhere.  It is thus unlikely that a reasonable person would find Laughlin's daily work environment "hostile or abusive."  See Harris, 510 U.S. at 121.

　　At the motion to dismiss stage, however, a plaintiff need not show that she is likely to succeed on her claims.  She need only plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  See Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  Hence, the Court will not dismiss Laughlin's hostile work environment claim solely because her claim is atypical – i.e., she is the leader of her office and her claim is based on the actions of decisionmakers elsewhere.  In certain circumstances, the combined effect of outside decisions affecting a plaintiff's job responsibilities, access to resources, and advancement opportunities may be to alter the terms and conditions of her employment for the worse.  Cf. Greer v. Paulson, 505 F.3d 1306, 1314 (D.C. Cir. 2007) ("There are various ways in which a hostile environment may extend beyond the physical workplace, and thus contribute to and form part of a hostile environment claim."); Wise v. Ferriero, 842 F. Supp. 2d 120, 126 (D.D.C. 2012)

(denying motion to dismiss hostile work environment claims based in part on denied

promotions).

Here, however, even accepting Laughlin's factual allegations as true, the Court concludes

that she has not alleged conduct that is "sufficiently severe or pervasive" to state a plausible

hostile work environment claim.  See Harris, 510 U.S. at 121.  Although Laughlin has offered a

theory to link together the acts comprising her claim, the acts span a period of several years and

were relatively infrequent.  The acts actually impacting Laughlin's job performance, for example,

consist of the June 2006 reassignment of Major Case 186 from Laughlin's management, the four-

year delay in approving a Border Liaison Officer, and the refusal to fill the case supervisor and

Media Representative positions requested by Laughlin in 2009.  These isolated incidents are not

fairly characterized as pervasive.  See Nurriddin v. Goldin, 382 F. Supp. 2d 79, 108 (D.D.C.

2005).  Nor, in the Court's view, were they particularly severe.  They were not "physically

threatening" or "offensive" in the traditional sense.  See Faragher, 524 U.S. at 787-88.  And even

if Laughlin can show that defendant's actions made her job more difficult – she alleges, for

example, that the case reassignment hurt her reputation and undermined her leadership of the

Seattle Division, see Compl. ¶¶ 96-100, and that not having a Media Representative impeded her

ability to cure any deficiencies in her handling of the media, see id. ¶¶ 105, 134-35 – the conduct

simply is not so "extreme [as] to amount to a change in the terms and conditions of [her]

employment" and hence is not actionable.  See Faragher, 524 U.S. at 787-88.[12]  Similarly, despite

---

[12] Also, as defendant points out, Laughlin's claim that the FBI's actions "unreasonably
interfere[d] with [her] work performance," see Faragher, 524 U.S. at 788, is undermined by the
fact that the Seattle Division received several awards for excellence under her leadership.  See
Def.'s MTD 19 (citing Compl. ¶ 109); see also Nurriddin v. Bolden, 674 F. Supp. 2d 64, 94
(D.D.C. 2009) (noting that promotion, performance award, and permission to do one-year detail

Laughlin's claim that serving as SAC of the same division for more than seven years while nearly all of one's peers are promoted can be "objectively and subjectively humiliating," see Opp'n 27, the Court simply does not find that the non-promotions and other performance-based actions alleged rise to the level of an actionable hostile work environment.  See Nurriddin, 674 F. Supp. 2d at 94 (dismissing hostile work environment claim alleging, among other things, opposition to career advancement, removal of important assignments, and lowered performance evaluations). Accordingly, Laughlin's hostile work environment claim will be dismissed.

  B. <u>Age Discrimination</u>

  Laughlin alleges in Count IV of her complaint that the FBI has discriminated against her based on her age since January 2007 "by repeatedly pressuring her to retire."  See Compl. ¶ 180. Under the ADEA, "the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's [age]."  Baloch, 550 F.3d at 1196.  Defendant argues that Laughlin has failed to state a claim for age discrimination under the ADEA because she has not alleged an adverse employment action.  See Def.'s MTD 20.

  Citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), Laughlin argues that defendant's argument is premature at the motion to dismiss stage.  See Opp'n 30 & n.157.  In that case, the Supreme Court held that a plaintiff claiming unlawful discrimination need not plead the elements of a prima facie case under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to survive a motion to dismiss.  See Swierkiewicz, 534 U.S. at 511.  Laughlin's reliance on Swierkiewicz and related cases is misplaced, however.  As the Court explained in Swierkiewicz, "the prima facie case relates to the employee's burden of presenting evidence that raises an

during period at issue "substantially undermine[d]" plaintiff's hostile work environment claim).

inference of discrimination" but will not apply in every employment discrimination case – for example, "if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." See id. at 510-11.  By contrast, an employment discrimination plaintiff will always have to prove that she suffered an adverse employment action, regardless of whether she relies on direct evidence of discrimination or circumstantial evidence raising an inference of discrimination.  So while Laughlin need not have set forth a prima facie case of age discrimination to survive defendant's motion to dismiss, her complaint must nevertheless "present facts that would establish the elements of [her] claim." See Bowe-Connor, 845 F. Supp. 2d at 91-92.  It is therefore appropriate to consider whether Laughlin has pled facts that, if true, could plausibly amount to an adverse employment action.  The Court concludes that she has not.

An actionable adverse employment action is one having "materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment such that a reasonable trier of fact could find objectively tangible harm." See id. (internal quotation marks omitted); see also Douglas v. Donovan, 559 F.3d 549, 552 (D.C. Cir. 2009). Laughlin asserts that repeatedly pressuring an employee to retire can give rise to an age discrimination claim.  Opp'n 29 & n.156.  She cites a number of cases stating that references or inquiries concerning retirement may give rise to an inference of age discrimination.  But in all of the cases cited, the so-called pressure to retire was not itself challenged as an adverse employment action but rather was used as evidence to support a claim based on a tangible employment action.  See Kaniff v. Allstate Ins. Co., 121 F.3d 258, 263 (7th Cir. 1997) (termination); Greenberg v. Union Camp Corp., 48 F.3d 22, 28-29 (1st Cir. 1995) (termination);

Sischo-Nownejad v. Merced Cmty. Coll. Dist., 934 F.2d 1104, 1108, 1112 (9th Cir. 1991)

(reassignment of high-enrollment courses, not providing needed supplies, and other actions

amounting to "less favorable working conditions"); Wilson v. Cox, 828 F. Supp. 2d 20, 34

(D.D.C. 2011) (termination); Miller v. Hartford Fire Ins. Co., 652 F. Supp. 2d 220, 234 (D.

Conn. 2009) (termination); Braverman v. Penobscot Shoe Co., 859 F. Supp. 596, 601 (D. Me.

1994) (termination).  Pressure to retire, without more, does not constitute "objectively tangible

harm," and in claiming that the FBI has pressured her to retire, Laughlin has not alleged any

change in her employment status relating to such pressure.  See Douglas, 559 F.3d at 552.  She is

still the SAC in Seattle.  Hence, Laughlin has failed to make out a plausible ADEA claim, and

that claim will be dismissed.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss will be granted in part and

denied in part.  Laughlin's gender discrimination and retaliation claims based on (1) her non-

promotion to SAC of the Office of International Operations or AD of the International

Operations Division and (2) the denial of a bonus in 2008 may go forward; her remaining claims

will be dismissed.  A separate order accompanies this opinion.


_____
           /s/
        JOHN D. BATES
     United States District Judge


Dated: February 14, 2013